Allen, J.
A creditor at large cannot assail an assignment or other transfer of property by the debtor as fraudulent against creditors, but must first establish his debt by the judgment of a court of competent jurisdiction, and either acquire a lien upon the specific property, or be in a situation to perfect a lien, and subject it to the payment of his judgment upon the removal of the obstacle presented by the fraudulent assignment or transfer.
*191 Every assignment or conveyance of property with intent to hinder, delay, or defraud creditors, is void as against creditors, not only at common law but by statute, and every conveyance or transfer of chattels not followed by an actual and continued change of possession, is presumed to be fraudulent as against creditors, and such want of change of possession is conclusive evidence of fraud, unless it be shown that the same was not made with intent to defraud. The term “ creditors,” as used in the statute, includes all persons who are creditors of the vendor or assignor at any time, whilst the goods remain in his possession, or under his control (2 R. S. 136, §§ 5, 6). A creditor by simple contract is within the protection of the statute as much as a creditor by judgment; but until he has a j udgment and a lien, or a right to a lien, upon the specific property, he is not in a condition to assert his rights by action as a creditor (Geery v. Geery, 63 N. Y. 256; Frisbee v. Thayer, 25 W. R. 396). The plaintiff, as assignee in bankruptcy, represents the whole body of creditors, and may in their behalf impeach a conveyance of property by the bankrupt as fraudulent, wherever the creditors might or could by any process acquire the right to contest its validity.
By the statute of this State (Laws of 1858, c. 314), any executor, administrator, assignee or other trustee of an estate or the property and effects of an individual, may, for the benefit of creditors or others interested in the estate or property so held in trust, disaffirm and treat as void all transfers in fraud of the rights of any creditors or others interested and maintain all necessary actions for that purpose. This act, conferring special authority for the benefit of creditors, dispenses with the necessity of any special or other lien in behalf of individual creditors. The act is not for the enforcement of specific liens for the benefit of individual creditors. No statute was necessary for *192 that purpose, as each creditor having such lien could vindicate his rights under the law as before administered. This act gave a new remedy in favor of creditors at large, by giving to an assignee or trustee for their benefit a statutory right to property conveyed in fraud of creditors, and this statutory right took the place of the specific lien of individual creditors required by law as a condition of their right to contest the validity of the transfers. The bankrupt law of the United States in express terms vests in the assignee all property coveyed by the bankrupt in fraud of creditors, and thus gives him a title to all property so conveyed, and supersedes the necessity of a judgment and execution lien in favor of any or all the individual creditors (Bankrupt Act, § 14 ; U. S. R. S. §5,046). The policy of the bankrupt law is to secure an equal distribution of all the property of the bankrupt among his creditors, and this object would be defeated if a fraudulent assignor could set the fraudulent assignee at defiance, and a fraudulent conveyance not be contested by the assignee. Creditors could not well do it after a decree in bankruptcy. They would be practically remediless. The bankrupt court would be a place of refuge for every debtor who had fraudulently disposed of his property, and the bankrupt act a perfect shield for fraud. The assignee represents the creditor’s rights without the technical obstructions to the enforcement of those rights by a creditor at large. It was held by the late Judge Hall, of the northern district of New York, that the assignee, represented the whole body of creditors, and that it was his right and duty to contest the validity of any mortgage by which one creditor had obtained a preference over another (In re Metzger, 2 Bank. Reg. 355).
The same principle was asserted by Chase, Ch. J., in the circuit court of Virginia, in Wynne Case (4 Id. *193 23), and by Judge Curtis, in Carr v. Hilton (1 Curtis, 230).
The latter judge says : “ A fraudulent conveyance is no effectual conveyance, as against the interest to be defrauded. This interest the assignee represents, so far as respects all creditors who prove their claims.”
In Collins’ Case (12 Blatchf. 548), fraud was not alleged. The validity of the chattel mortgage was contested upon the sole ground that it had not been filed as required by law, and Judge Hunt held that within the terms of the act none but creditors who had, by judgment and execution, obtained a specific lien on the thing mortgaged, or subsequent purchasers or mortgagees in good faith, could attack the mortgage, for the reason alleged, and that the assignee was not within the benefits of the statute. The reasoning of the learned judge, it must be conceded, would apply to a mortgage alleged to be fraudulent in fact; but in following it as an authority, we think the principle should not be extended so as to prove a shield to actual fraud. The non-compliance with a statute, merely imposing a new condition to the validity of chattel mortgages, for the protection of the particular classes mentioned, and not involving the question of fraud or fraudulent intent, may well be. restricted in its operation to the individuals for whose immediate protection it was passed. Upon sound reason, the policy of the law, as well as the authorities quoted, and others that might be referred to, there can be no doubt, we think, that the plaintiff, as assignee, has a right of action for property conveyed by the bankrupt in fraud of his creditors, although none of the creditors have acquired a specific lien.
It is not such liens or any particular interest in the property, or an interest for the benefit of any one creditor or class of creditors, that is vested in the assignee, but the entire property fraudulently transferred, and *194 for the benefit of all the creditors. The assignee takes title, not under any claim of right existing in the creditors, but under the statute, and that right he may assert' by action, although no individual creditor, or all the creditors combined, could have a standing in court to challenge the conveyance.
The case was not submitted to the jury upon the presumption of fraud, arising from the want of a change in the possession. There was no such change, and the presumption by statute was, that the mortgage was fraudulent and void for that reason, and such presumption was conclusive unless the defendants satisfied the jury by evidence that it was not made with intent to defraud, and such would have been the proper instruction to the jury if that had been the only circumstance relied upon to impeach the transfer (2 R. S. 136, § 5).
Evidence was given that from the time of making the mortgage to the defendants, the mortgagor continued to deal with the mortgaged property, consisting chiefly of lumber materials, in which he was a dealer, as he had been accustomed to do, buying and selling as opportunity offered, and using the proceeds of his sales to meet his liabilities, and in the prosecution of his business in all respects as if no mortgage was in existence, and there was evidence tending to prove that business was thus carried on, and the mortgaged property dealt with and sold by the permission of the defendants. This, with the other facts, of which there was also evidence that the defendants had, from the time of making the mortgage for several months thereafter employed a Mr. Brown in and about the business of the lumber yard of the mortgagor, acting with and under him, to look after their interests, and that the mortgages were made to secure advances, to enable the mortgagor to continue his business, made it a question for the jury whether this continued dealing with, and *195 sales of the mortgaged lumber was not in pursuance of an arrangement between the parties contemporaneous with the giving of the mortgage, that the mortgagor should continue his dealings with and sales of lumber as before, notwithstanding the mortgage. That question was submitted to the jury, and they have found the arrangement as suggested.
The instruction to the jury upon which the case hinged, as explained and qualified upon a recalling of the jury for such explanation, and to avoid a misapprehension, was, that if they found that it was the understanding of these parties at the time the mortgage was made, that Mr. Becker, the mortgagor, was to go on and sell part of this stock and use the money generally in his business, that was fraudulent in law. The charge was equally explicit, that unless they found such to have been the understanding, and the sales had, in fact, been made without the knowledge or assent of the defendants, they would be entitled to a verdict. There was no error in charging the jury that the understanding referred to might be inferred if the defendants had permitted the sales to be made as alleged. It is the province of the jury to make all necessary inferences from the facts proved, and the existence of the arrangement and understanding was a material and necessary inference from the undisputed facts.
The question then is, did the arrangement, if made as alleged, and carried out by the permitted sales of and dealing with the mortgaged property, necessarily invalidate the mortgage? Bid it conclusively prove that the mortgage was fraudulent in law ; that is, so conclusively establish the fraud that a verdict of the jury to the contrary would have been set aside as against evidence ? Such an arrangement is incompatible with a mortgage designed only as security to the mortgagee. The dealing with the mortgaged property *196 as merchandise by the mortgagor, and the sale of the same in the ordinary course of business as a merchant, with the consent of the mortgagee, necessarily destroys the value of the mortgage as a security, and makes it only available, if for any purpose, so long as this arrangement and dealing continues to protect the property from creditors and secure it to the mortgagor. Such a transaction is necessarily fraudulent. It hinders and delays other creditors without securing the application of the property or its avails to the payment of the mortgage debt.
In Frost v. Warren, 42 N. Y. 204, it was held that the fact that the mortgagor continued to sell the mortgaged property, consisting of goods in a store with the knowledge of the mortgagee in the absence of proof, that this was pursuant to an agreement between the parties, did not render the mortgage fraudulent in law as against other creditors, clearly implying that such an agreement, and a selling of the goods in pursuance of it, would constitute fraud in law, that is, be conclusive evidence of fraud. Here the jury have found the agreement upon evidence that could warrant no other conclusion. Advances made to enable the mortgagor to continue his business as a dealer in lumber, the entire stock of the dealer mortgaged to secure the advances, an agent of the mortgagees designated and appointed to supervise the business and watch their interests, sales continued by the mortgagor as before, and the avails used by him for his support, and as his wants and business calls demanded, and this continued for a full year, the mortgagee receiving not the avails of the mortgaged lumber, but such moneys as the mortgagor could spare from the general business, — all point to but one conclusion, that this was in pursuance of an agreement between the parties, cotemporaneous with the mortgage. Such an arrangement, included in and making a part of the written instrument of mort *197 gage, would clearly invalidate it as fraudulent in law as that term is understood; that is, would be conclusive evidence of fraud in fact, and would be so held by the court as matter of law. This was decided in Edgell v. Hart, 5 Seld. 213. Whether the agreement is in or out of the mortgage, whether verbal or in writing, can make no difference in principle. Its effect as characterizing the transaction would be the same. The difference in the modes of proving the agreement cannot take the sting out of the fact and render it harmless. If it is satisfactorily established, the result upon the security must be the same.
It is the fact that such ah agreement has been made and acted upon, that in law condemns the security, and not the fact that it is proved by the instrument of such suretyship, instead of by parol or in some other way. This question is considered by Judge Denio in Gardner v. McEwen (19 N. Y. 123), and by Judges Grover and Woodruff in Russell v. Winne (37 N. Y. 591), and although not expressly decided in either case, it is very conclusively shown, by the reasoning of those learned judges, that an agreement, by which the mortgagee is permittéd to deal with the mortgaged property outside of the mortgage, and proved by parol, is equally fatal to the security, as if made a part of the written mortgage.
The judge presiding at the trial of this action adopted the principle adjudged in Edgell v. Hart, and applied it to an agreement proved by evidence aliunde the mortgage in accordance with the views of the judges named. We are of the opinion that the correct rule was applied, and that there was no error of which the defendants can complain, in the submission of the case to the jury.
[Remarks on a claim not necessary to notice are omitted.]
*198 The judgment must be affirmed.
All the judges concurred, except Audbews, J., who was absent.