By the Court.*—McCue, J.
It is evident that the firm of Milligan and McGrayne, at the time of its dissolution, was very much embarrassed, if not insolvent, and that this was known to both of the parties.
Milligan sold out his interest in the partnership assets to McGrayne, the latter assuming the partnership debts, and executing to the former a mortgage on the assets to secure the payment of the purchase-money, to wit: $500 in weekly installments of $30 each. The dissolution took place on June 26, 1878, and McGrayne carried on the business "until July 24, 1878, when he made an assignment for the benefit of creditors to the plaintiff, who immediately took possession of the property assigned.
Between June 26 and July 24, McGrayne had paid three weekly installments of $30 each on the mortgage; a fourth one had become due on July 24, but was *63 not paid. ' On July 25, 1878, Milligan assigned Ms mortgage to one Masters, who, on the following day, assigned it to the defendant, Lizzie A. Milligan, the wife of the original mortgagee.
On July 26, 1878, the defendant Lant, who is a constable, under the authority of the mortgagee, entered the store where the firm business had been carried on, and without the knowledge and consent of the plaintiff carried away the stock and fixtures, being the property described in the chattel mortgage, and being also the property which had been assigned to the plaintiff.
The foregoing facts were fully established by the evidence; and at the close of the case, the court directed a verdict for the plaintiff, submitting to the jury only the question of the value of goods, &c. From this ruling the defendants appeal.
We are of the opinion that the case was properly disposed of. Milligan and McGrayne, as partners, were each liable for the partnership debts, and the agreement of dissolution, while it changed the relation of the partners as between themselves, did not relieve the retiring partner from liability to the creditors of the firm.
The creditors still had a right to look in the first instance to the partnership assets for the payment of their claims.
They had an equitable lien upon the same, and no private agreement between the partners, admitting that it was entered into in good faith, can operate to prevent the application of partnership property to the payment of partnership debts. The mortgage given by McGrayne to Milligan must therefore be presumed to have been given and received with full knowledge of all the equities which might be invoked against it in the event of any question arising, affecting the rights of the creditors of the firm.
*64 Any other principle than this would be a direct temptation to the perpetration of a gross fraud on the rights of the firm creditors—to consummate which it would only be necessary, if a partnership found itself in failing circumstances, for one partner to sell out to another at a consideration large enough to cover the full value of the common property, take back a mortgage on the same, foreclose it, and apply the proceeds to the payment of a private debt due from his co-partner, which in equity and conscience should be first applied to the satisfaction of the partnership liabilities.
Looking at the case from the standpoint of a creditor, all the interest which Milligan could sell in the partnership property or assets was his share “in the surplus of those assets after the partnership debts were paid,” and that is all which it was in the power-of McGtrayne to mortgage.
We think the testimony as to the financial condition of the firm at this time was very material, and properly admitted; and the defendants did not attempt to contradict McGrayne’s testimony, that at this time the firm was not able to pay its debts. There is no evidence that any new assets had been added to the stock on hand at the time of the dissolution ; and of the receipts from the business, which were estimated at from $40 to $50 per week, $30 per week was paid by McG-rayne to Milligan on account of the mortgage. It is admitted that nothing was taken by the defendants, but that which had been partnership property.
Beyond the recitals in the assignments of mortgage it does not appear that any valuable consideration was paid by Mrs. Milligan, and she must be held to have taken the mortgage subject to all equities which might be urged against it. The mortgage covered nothing but partnership property; and it was valid only to the extent that there was any surplus stock or property *65 belonging to either partner after the debts were paid. It appears that there was no surplus. What then could the mortgage operate upon ? (See Staats v. Bristow, 73 N. Y 268).
In view of the established facts in the case, we think the mortgage was fraudulent and void in law as against the partnership creditors, and that the taking of the goods and chattels in question by the defendants was unlawful and wrongful.
When the taking of property is wrongful, it is not necessary to make a demand for its return in order to maintain the action.
Under the act of 1858 (L. 1858, c. 314), the plaintiff as assignee had a right to maintain this action, and, in behalf of the firm creditors, to treat the transfer by the one partner to the other, and the mortgage given on the transfer, as void (See Southard v. Benner, 72 N. Y. 427).
In view of the conclusion which we have reached upon the main question above discussed, it does not seem necessary to refer to the facts that the mortgage, covered a stock of goods which were intended to be sold by retail from day to day as opportunity offered ;■ that the mortgagor continued in possession ;■ g¡nd that the mortgage was not filed until after the execution and delivery of the assignment to the plaintiff and his acceptance of the trust; all of which are of controlling influence in relation to the dona fides of the transaction.
These facts were not disputed, and upon this branch of the case there was no question to be submitted to the jury.
One other objection remains to be referred to, viz. : that there was a defect of parties. It is claimed that Mrs. Milligan should have been made a party defendant. . This action being for a wrongful conversion, the plaintiff had his election, as in all cases of tort, to sue *66 one or any number of'several joint tortfeasors. Where the act complained of is a wrongful seizure of property by one, it is not necessary to join with him in the same action another under whose instructions he acts. This may be done or not, at the option of the plaintiff.
■ We think the case was rightly disposed of, and the judgment must be affirmed with costs.
Reynolds, J., concurred.
Judgment accordingly.

Present—MoCue and Reynolds, JJ.