EDGAR T. BRACKETT, AS ASSIGNEE IN BANKRUPTCY OF FRANK E. DARROW AND MARY J. DARROW, RESPONDENT, v. GEORGE HARVEY, APPELLANT.

*Assignee in bankruptcy — right of, to maintain an action to set aside a chattel mortgage given by the bankrupt — when a chattel mortgage is void as to the mortgagor's creditors.*

An assignee in bankruptcy can maintain an action to set aside a chattel mortgage given by the bankrupt, even though as to him it is valid, if from the circumstances and agreement under which it was given, it is fraudulent as to his creditors.

It seems he may maintain such an action, when the mortgage is void as to the creditors, only by reason of the failure of the mortgagee to file it. (*Per* LEARNED, P. J.)

Harvey and Darrow entered into an agreement whereby the former was to sell to the latter a stock of lumber and take back, to secure the purchase-money, a chattel mortgage thereon, which was to be renewed from time to time; the renewed mortgages to cover such stock as Darrow might then, at the time of such renewal, have. Darrow was to sell the lumber on sixty or ninety days'

time, if he so desired, and turn over to Harvey business paper received upon such sales, indorsed by himself, which was to be credited upon the debt when collected. He was also to pay over the moneys received on sales of the lumber after using so much thereof as was necessary to replenish his stock and support his family. The agreement was carried into effect, the original mortgage for $23,000 being filed in March, 1874. It was renewed by others down to September, 1875, when there remained due thereon about $7,000. During the first year Darrow sold about $57,000 worth of lumber and received about $50,000, and during the second year sold about $20,000 worth and received about $10,000.

*Held*, that the agreement was fraudulent and void as to the creditors of the mortgagor.

That if it could be construed as providing for the application of all cash and notes as soon as received, whether collected or not, upon the debt, then the mortgagor received such cash and notes as the agent of the mortgagee; and having so received more than enough to satisfy the mortgage the same must, so far as the mortgagor's creditors were concerned, be regarded as paid.

That the last mortgage given could not be construed as intended to secure to the mortgagee the payment of the moneys so collected by, and due from the mortgagor as his agent, because it expressly purported to be given in pursuance of the original agreement and to secure a portion of the original debt.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action, at the Saratoga Special Term, setting aside certain assignments of accounts and two certain chattel mortgages, executed to the defendant Harvey by the firm of F. E. Darrow & Co., who were lumber dealers, compósed of Frank E. Darrow and his mother, Mary J. Darrow, and doing business at Saratoga Springs, and directing the proceeds thereof, collected by Harvey, to be paid to the plaintiff on the ground that the said assignments and chattel mortgages were fraudulent as to creditors and the plaintiff as such assignee.

*Harrington Putnam*, for the appellant.

*A. Pond*, for the respondent.

LEARNED, P. J.:

The defendant insists that the assignee in bankruptcy cannot set aside a chattel mortgage valid against the bankrupt. The contrary is decided in *Southard* v. *Benner* (72 N. Y., 424). But the defendant cites the remarks of Mr. Justice HARLAN, in *Stewart* v. *Platt* (101 U. S., 738, *et seq.*). So far as these remarks sustain the defendant's position, they seem to be overruled by the later cases of *Trim-*

*ble* v. *Woodhead* (102 U. S., 647), and *Moyer* v. *Dewey* (103 id., 301), which hold that the assignee in bankruptcy may sue to set aside a fraudulent conveyance of property. Indeed, the language of the learned justice in *Stewart* v. *Platt* (*ut supra*, 739) shows that he did not quite appreciate the meaning of the New York law. He speaks as if the word "creditors" in the New York statute, requiring the filing of chattel mortgages, meant "judgment creditors." It had been held in *Thompson* v. *Van Vechten* (27 N. Y., 568), that an unfiled chattel mortgage is void as to a creditor at large; although he would not be in a position to raise the question until he should obtain judgment or process. And the same doctrine, viz., that a creditor at large is within the protection of the statute, is held under the statute requiring immediate delivery of goods sold or mortgaged. (2 R. S., m. p. 136, §§ 5, 6; *Southard* v. *Benner, ut supra*.) The two statutes are of similar intent and character, and the word "creditors" has a similar meaning in each. Since, then, a creditor at large is within the protection of the statute relative to the filing of chattel mortgages, it would follow that the assignee in bankruptcy representing such creditors might assert the invalidity of the mortgage on that ground. But in the present case the question of the invalidity of the mortgages does not rest upon a neglect to file them, but upon such an alleged contract in regard to the property as would be necessarily fraudulent. And if these mortgages were, as a matter of fact, fraudulent under all the circumstances as against the bankrupt's creditors, it can hardly be doubted that the assignee might maintain this action.

The agreement made between Darrow and Harvey was to the effect that Harvey was to sell his stock of lumber to Darrow at a certain price. Darrow was to execute a chattel mortgage thereon for the purchase-money, and this chattel mortgage he was to renew monthly. Harvey was to receive from Darrow business notes to be indorsed by Darrow, and was to apply them on the debt. Harvey testifies that he understood that Darrow was to go on and sell the lumber and to pay him the proceeds, except what he used in replenishing his stock. Harvey supposed that Darrow used a portion of the proceeds for his own and his family's support. The original mortgage was for about $23,000, and was made in December, 1873. In September, 1875, the debt had been reduced to about $7,000

The original mortgage was " re-filed " in March, 1874, and in May, 1874. Successive mortgages were filed in August, 1874, November 1874, March, 1875, May, 1875, June, 1875, July, 1875, August, 1875, and September, 1875. These mortgages state that they are in pursuance of the original contract, and all but the first contain an agreement by the mortgagors that as the property is sold by them, they will apply the proceeds to the payment of the debt.

The mortgagors the first year sold about $57,000; the second, about $20,000. Their receipts were about $50,000 the first year, and $10,000 the second. During these years the mortgagors were purchasing lumber from other persons — more than $10,000 each year. These purchases were often on credit; and in August, 1875, there was owing for such debts about $12,000.

The mortgagors made a large amount of their payments to the mortgagee by assigning accounts and transferring business notes' to him.

Now it is quite plain from these and other facts that the plan of the parties was that the mortgagors should carry on the business, replenishing their stock by purchases on credit or otherwise; that they should sell the mortgaged property and the stock which they might purchase, and should pay the avails to the mortgagee, either in cash or in notes; and in order to keep him secured they should, at frequent intervals, execute new mortgages. The only object of such renewals could be to cover the new purchases which the mortgagors should make. The defendant testifies that he had sold the mortgagors nothing since July, 1875; whether he had sold them anything before that time and after the original sale does not appear.

It seems to us that these facts bring this case exactly under the decision in *Southard* v. *Benner* (72 N. Y., 424). It is found by the court, on abundant evidence, that there was an agreement made between the parties, at the time of the original contract, to the effect that the avails of the sales should be used in carrying on the business, in paying the personal expenses of the mortgagors and in payments to the mortgagee on his claim, and that the mortgagors had no other available means than these. A similar doctrine to that of *Southard* v. *Benner*, is laid down in *Robinson* v. *Elliott* (22 Wall., 513).

It is not merely the retaining of possession by the mortgagor, nor even is it the selling by him of the mortgaged property as the agent, and for the benefit of the mortgagee, which shows fraud. But it is the continuous dealing by the mortgagor with the mortgaged property as if it were his own, with the evident consent of the mortgagee; the selling of the same on credit by the consent of the mortgagee; the using the avails for the personal expenses of the mortgagor; the buying on credit of other goods and covering them speedily with new mortgages to the same mortgagee. These acts, done in pursuance of the original contract, fully justified the finding that the arrangement was a fraud on creditors. In *City Bank* v. *Westbury* (23 Sup. Ct. N. Y. [16 Hun], 458) it was said that where there was a chattel mortgage on a stock of goods, and the mortgagor was to sell for cash or on credit, and was to apply the accounts, *when collected*, on the debt, the arrangment was fraudulent. In *Caring* v. *Richmond* (29 Sup. Ct. N. Y. [22 Hun], 369) the same mortgage was again considered, and it was held that if these accounts were to be immediately assigned to the mortgagee and applied, the mortgage was not invalid as a matter of law. Now, in the present case, the mortgages state that the mortgagees will apply the " proceeds of sales" to the payment of the mortgage debt. But the contract, under which all the mortgages are made, states that the mortgagee " will take business notes running sixty or ninety days, to be indorsed by said F. E. D., and apply the same in payment of said Darrow's notes as they fall due." And it was testified to by one Walker, that in regard to the accounts that were turned out, the mortgagee was to apply what could be collected and return those not collected to the mortgagor. Thus from the agreement that the mortgagor was to indorse; from the limitation of the notes which the mortgagee was to take to those of sixty and ninety days, while the mortgagor was not forbidden to sell at longer time, and from the testimony of Walker, it appears that it was not understood that every sale on credit was at once applied to the reduction of the debt, as in the case last cited. The mortgage might well be considered fraudulent on that ground also.

But again, if the agreement was that the goods mortgaged should be sold by the mortgagor for the benefit of the mortgagee, and that the " proceeds of sales" should be applied on the mortgage debt, then

we have these facts : The mortgage was not given as a continuing security for liabilities assumed and to be assumed by the mortgagee. It was given to secure a certain debt of some $23,000. The mortgagors went on and sold the property thus mortgaged by virtue of the authority implied in the mortgage by the words " as the said lumber and property is sold or disposed of by them." In so doing they were selling as agents of the mortgagors, as was held in *Conkling* v. *Shelley* (28 N. Y., 360 ) And it was said in that case that the avails should have been applied in payment and satisfaction of the mortgage, whether the money was ever actually paid to the mortgagees or not. The receipts for the first year were about $50,000 ; for the second, about $10,000. Under that decision then, the mortgages had been fully paid before the last two were given.

The defendant insists, however, that this principle can be invoked only in the case of an actual adverse lien. In *Conkling* v. *Shelley* (*ut supra*) the action was one of replevin, brought by the mortgagees against a judgment creditor who had levied on the property. Such creditor had acquired the interests of the mortgagee, and the court said that the extent or amount of that interest depended on the amount due on the mortgage. The question there decided did not turn on the point of fraud in such a mortgage, actual or constructive, or as to the right of a creditor at large to set up such fraud. The only point was that, as a matter of fact, the mortgage had been paid. There the court say that the mortgagors were liable to the mortgagee "*for the money received and misapplied by them.*" But the court distinctly hold that the mortgage had been paid, inasmuch as the mortgagors had received from these sales enough to pay it.

Now, if it be said that these present mortgagors were liable even to the mortgagee for the money thus received and misapplied, and that being thus liable they could lawfully mortgage their property for the same, then the answer is that, if they might, they did not. The last two mortgages being those under which the defendant claims and which are dated in August and September, 1875, purport to be given to secure notes made by the mortgagor and dated in December, 1873, the month when the contract was made, and purport to be given in pursuance of that contract. Thus the only indebtedness secured, or intended to be secured, by these last

two mortgages was the amount claimed to remain due on the original debt. These mortgages were not given to secure an indebtedness arising out of a misapplication of money received by the mortgagors as agents for the mortgagee. That was a liability which arose subsequently and was of a different nature altogether. There is no reason why a mortgage given to secure a debt which in fact has been paid should be converted into a mortgage to secure another liability which arose subsequently and in a different manner. If this could be done in such cases then the decision in *Conkling* v. *Shelley* would have been different, for in that case the mortgagors were confessedly liable to the mortgagee for the money misapplied. But it was not held that this liability could be protected under the mortgage given to secure the debt which had been in fact paid.

The only recovery which the plaintiff was allowed, was for the net amount received from sales made by the mortgagee under the mortgage, and from the assigned accounts.

It may be said that fraudulent chattel mortgages can be attacked only on behalf of one who was a creditor at the time of the alleged fraud. To this the reply is, that even if that rule applies to a case of actual and not merely presumptive fraud, still it appears here that there were creditors of the mortgagors, at the time of executing these last mortgages, other than the mortgagee. These creditors the assignee represents.

We have examined the objections to evidence, and find none which we think should be sustained.

On the question of interest, whether at six or seven per cent after January, 1880, without expressing our opinion, we follow the decision of the first department.

The judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment affirmed, with costs.