39h    275
38 Mis²400

IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF ASA BIGELOW KELLOGG, AS EXECUTOR, UNDER THE WILL OF BENJAMIN AKIN, DECEASED.

*Surrogate — power of, to inquire as to the validity of a transfer from the deceased to his executor.*

Upon the final accounting of an executor it appeared that the deceased had, some time prior to his death, delivered to his daughter a note payable to his order, made by her husband, who thereafter became his executor, intending to give the same to his son-in-law, and that the note was destroyed by the son-in-law during the lifetime of the deceased. Upon the hearing the surrogate, upon the application of a general creditor, adjudged the gift of the said note to have been fraudulent and void as to the creditors of the deceased, although valid as between the deceased and the son-in-law, and directed the executor to pay to one of such general creditors a portion of the amount of the note.

*Held*, that the evidence did not show that the gift was made with any intent on the part of the deceased to hinder or defraud his creditors, and that the same was valid.

That the surrogate had no power to inquire into the validity of the transfer and require the executor to account for what he had received thereunder. (LANDON, J., dissenting.)

APPEAL from a final decree, entered upon the accounting of Asa Bigelow Kellogg, as executor, under the will of Benjamin Akin, deceased.

*L. Laflin Kellogg*, for Asa B. Kellogg, executor, appellant.

*James K. Averill*, for C. B. Lindsay, special guardian.

*Arthur H. Smith*, for Sarah A. Kellogg, appellant.

*George W. Lyon*, for Mary C. Akin, general guardian, appellant.

*Matthew Hale* and *Ward & Cameron*, for Alletta A. Akin, respondent.

LEARNED, P. J. :

This is an appeal from the final decree on the executor's accounting, made after a reference to a referee and upon his report.

The executor appeals, and claims that he is overcharged by the decree.

A general guardian of infant legatees appeals, and claims that the executor should be charged with certain additional items, and that he should be decreed liable to legatees as well as to creditors.

Sarah A. Kellogg, a legatee, appeals, and claims that Alletta A. Akin, to whom the executor was decreed to pay, is not a creditor.

Several items come up for review on the executor's appeal. The largest is the $11,175 note. In December, 1875, the deceased held a note made to his order by Asa B. Kellogg, his son-in-law, and now his executor, for $11,175. This note near to, and after, that time, the deceased gave to his daughter, Sarah A. Kellogg, to give to her husband, Asa B. Kellogg. She received it and thereupon, during the lifetime of the deceased, delivered it to Asa B. Kellogg. The deceased intended thereby to give the note to Asa B. Kellogg; and it was delivered to, and received by, Kellogg under that intent, and was destroyed by him during the life of the deceased; and hence it was not in the possession of the deceased at his death. These are the findings of the referee. He was asked to find that there was no proof that the note was delivered with any fraudulent intent by the deceased. But he refused to pass on the question of intent, and found that the effect of the transfer was to work a fraud on creditors.

It is to be noticed that the referee found that nothing had come into the hands of the executor applicable to the payment of legacies, and that he held the executor liable in respect to this note, only so far as regarded creditors; although, when charged with this note, there appeared to be more than enough to pay the creditors. It appears, therefore, that the question decided was that the gift by Benjamin Akin, the deceased, of the note to Asa B. Kellogg was fraudulent as to the creditors of said Akin, but valid as to Akin himself; and that, therefore, inasmuch as Kellogg had been made the executor of Akin, he could be charged in his account for the benefit of such creditors, with the amount of the note thus given to him. It must be borne in mind that, as between Akin and Kellogg, the gift was valid. It could not have been reclaimed by Akin, nor could Akin have recovered on the note.

An important question arises whether, on the accounting of an executor, the surrogate can decide that a transfer made during the lifetime of the deceased to the person who is afterwards appointed

his executor, valid as between the parties, is void as to creditors; and can thereupon require the executor to account for what he has thus received. For the benefit of the creditors, such an act can be disaffirmed by an executor under Session Laws 1858 (chap. 314, § 1). That an executor under this statute can disaffirm such fraudulent acts in behalf of creditors, although they are not judgment creditors, is established in *Southard* v. *Benner* (72 N. Y., 424). But, in this present case, the executor does not seek to disaffirm, under that statute, an act of the testator. On the contrary, the executor affirms the act, and a creditor of the testator by simple contract claims to set aside the act as fraudulent in respect to creditors. In no other instance, so far as we know, can a creditor attack a transfer as fraudulent until he has recovered a judgment and issued execution. (*Geery* v. *Geery*, 63 N. Y., 252, cases cited at 256; *Southard* v. *Benner*, *ut supra*; *Adsit* v. *Butler*, 87 N. Y., 585; *Lichtenberg* v. *Herdtfelder*, 5 Civil Pro. R., 426.) In like manner an action to enforce a creditor's right as to a fraudulent conveyance, where the consideration is paid by the debtor and the title taken in another (1 R. S., m. p. 728, § 52), can only be brought after a judgment has been recovered, notwithstanding the debtor is dead and his estate insolvent. (*Estes* v. *Wilcox*, 67 N. Y., 264; *Ocean N. Bank* v. *Olcott*, 46 id., 12, at p. 22, where this general rule is laid down as applicable to all cases.)

The case of *Dewey* v. *Moyer* (72 N. Y., 70), points out the relief which a judgment-creditor may have when the assignee in bankruptcy (analogous to the executor) refuses to bring an action to set aside a fraudulent conveyance. (See, also, *Genesee River N. Bank* v. *Mead*, 25 Sup. Ct., N. Y. [18 Hun], 303.)

The provisions of 2 Revised Statutes, 84, section 13, declaring an executor to be liable for any just claim of the testator against him as for so much money, does not apply, because this claim was not one which the testator had against the executor. The testator, at the time of his death, had, according to the referee's finding, no claim against Kellogg. This is manifested, without question, by the decree, which holds this executor not liable to legatees. If he owed this money to the testator he would be liable to legatees as well as to creditors, which is the express language of the statute.

If Akin had assigned to Kellogg personal securities, under cir-

cumstances such that the act was fraudulent against Akin's creditors, the surrogate could not, as we think, on Kellogg's accounting as executor, have charged him with the amount thereof, even in favor of creditors. And the same principle must apply where the gift was made of the executor's own note. This very question was decided in *Richardson* v. *Root* (26 Sup. Ct., N. Y. [19 Hun], 473.) The intestate, shortly before his death, gave to his wife an order, or draft, which operated as an equitable assignment to her of certain moneys. Assuming that this was valid between the intestate and his wife, but fraudulent as to his creditors, the court held that, on an accounting before the surrogate, the wife, one of the administrators, could not be charged with this money; that the surrogate had not jurisdiction to try the issue as to the good faith of a transfer made by the deceased to a person who sub-sequently became administrator of his estate, where the transfer was confessedly valid between the parties. This decision seems to us sound and applicable. We are cited to none in conflict with it. Further, in the *Genesee River National Bank* v. *Mead* (92 N. Y., 637), we have an action brought by a judgment-creditor of a deceased against the defendant, individually and as executrix, to require her to account for the proceeds of a life insurance policy, alleged to have been assigned to her in fraud of creditors. It appears from the opinion that she had rendered an account as executrix, in the Surrogate's Court. If she could have been charged with this money there, the failure to charge her would have made the matter *res adjudicata* in her favor. (*Hyland* v. *Baxter*, 98 N. Y., 610.) But the Court of Appeals decided the question on the merits; thus holding that the action was properly brought, and that the accounting was not *res adjudicata* in this matter. The same view above set forth was taken by this court in the analogous case of an assignee for the benefit of creditors. (*In Matter of Raymond*, 34 Sup. Ct., N. Y. [27 Hun], 508.)

It is urged that section 2739 of the Code gives jurisdiction by the words, "respecting a debt alleged to be due by the accounting party to the decedent." The answer is that this is not a debt, in any view, due by the executor to the decedent. As already said, the decedent could not have recovered against Kellogg on this claim. The creditors do not claim through the decedent, but adversely to him.

It is urged that the executor has power to disaffirm a conveyance, fraudulent as to creditors; and that if he neglects to do this, he fails to do his duty, and hence is liable before the surrogate. The question whether he ought to disaffirm and attack a conveyance, alleged to be fraudulent, is one which requires sound discretion, and must generally be left to the judgment of the executor. And inasmuch as creditors can act for themselves against an alleged fraudulent conveyance of the deceased, we are not prepared to say that the executor can be made liable before the surrogate, when, in his discretion, he thinks it unwise to attack the alleged fraudulent conveyance. The case of *Merchant* v. *Merchant* (2 Bradf., 432), cited by the respondent, did not arise on a transfer claimed to be fraudulent as to creditors. The question was whether there had been a gift *causa mortis* to the person named as executor; that is, whether the executor individually owned the property. If he did not, then the property belonged to the testator at his death. In the present case the gift is established. The case of *Martin* v. *Root* (17 Mass., 222), is from a State with a very partial equity system. And that case holds that when a debt has been released by the decedent, or in fraud of creditors, his administrator can recover the same, not for creditors only, but also for the heirs or next of kin o the decedent. That principle is questioned in *Holland* v. *Cruft* (20 Pick., 338). And, as it is not the law of this State, the case has no application to the present question.

We may further suggest that if (as the respondent admits) this alleged liability would ordinarily be enforced by an action at law, the executor cannot be deprived of his right of trial by jury.

Again, it is urged by the executor that, if the surrogate had jurisdiction, he erred in holding that the delivery of the note was, in fact, fraudulent as to creditors. The testator, in December, 1875, held two notes, each for $11,175; one made by his son Theodore, the other by his son-in-law Asa B. Kellogg. This son died in the spring of 1876–77, leaving two children. They and the wife of the executor are the next of kin. Some time in, or after, December, 1875, and evidently before the spring of 1876, the deceased gave these two notes to his daughter Sarah to be destroyed, saying it would embarrass Theodore to pay his, and he did not think it just to give to one

without the other. This act, then, was evidently intended by the deceased as a kind of advancement to his two children, by relieving one and the husband of the other from these equal liabilities. The question is, whether that was a fraudulent act as to this respondent creditor, Alletta A. Akin, the widow of the deceased. This must depend on the state of his property at the time, and not on its subsequent condition. (*Sexton* v. *Wheaton*, 8 Wheat, 229.) The want of a valuable consideration is not enough to show fraud, and fraud is a question of fact. (2 R. S., m. p. 137, § 4.) There is not pointed out any evidence of actual intent to defraud, and the referee refuses to pass on the question of intent, saying that the effect of the transfer was to work a fraud on creditors. It could work no fraud if the deceased was then solvent. The referee has made no finding of the debts and property of the deceased at that time.

On examining as to the liability, we find three Crapo notes, amounting in all to $63,330.75. The respondent claims that there is another Crapo note of $2,000. But that note, it appears, was only collateral to a mortgage of that amount on Mrs. Benjamin Akin's property. Without some proof that the principal debtor and her security were worthless, this $2,000 note should not be taken into account. If the deceased had paid it he would have been subrogated to the mortgage. In fact, Mrs. Akin paid her mortgage. Then there is the note held by Mrs. Alletta A. Akin, say $5,700. The respondent also claims that there was an indebtedness to Asa B. Kellogg of $6,900.07. But that was the balance of an account December 31, 1877, some two years after this transfer. And that account shows, May 1, 1877, only $2,619.35. Thus $4,300 arose after May 1, 1877. How much, if any, existed in December, 1875, does not appear.

Excepting the mortgages on real estate, these are all the debts shown to have then existed, being a little over $12,000. The deceased owned at the time a farm in Greenbush, 210 acres; Nos. 3 and 5 State street and 88 and 89 Quay street, Albany, and house and lot Forty-sixth street, New York. The value of these it is difficult to determine. Evidently some of them have greatly depreciated; some were subject to mortgages. The referee refuses to find that the deceased was possessed of the farm, but such refusal can be based only upon the fact that, by a deed dated May 1, 1877,

and probably not delivered until some time afterwards, the deceased conveyed this farm to his daughter Sarah A. Kellogg. This subsequent conveyance did not affect the question whether the deceased was solvent in December, 1875. We see no evidence that the deed was delivered at the same time with the release of the note. The value of the farm is not proved. The Forty-sixth street property was said to be valued at $50,000, less a mortgage thereon of $20,000. The executor thinks he received $33,000 for it. His account seems to show that, in 1883, he sold it for $11,528  In the same year he sold 88 and 89 Quay street for $953, and 3 and 5 State street for $807. In January 1, 1876, the deceased had a claim against A. B. Kellogg (other than the note) of a little over $2,000. Whether that was collectible does not appear.

There was also a claim of deceased against Samuel Schuyler, which (from the briefs of counsel) seems to have been in existence at the time in question. Several years afterwards $6,500 was recovered thereon in favor of deceased.

There had also been another Schuyler claim, which had been settled in favor of deceased. The executor testified that about $16,000 came from that, which was credited to deceased.

Another matter should be mentioned. As far as we can understand the statements, the deceased paid off a mortgage of $2,000 on the Quay street property in 1878. It would seem, therefore, that the Quay street property, in fact, proved to be of no value, or, perhaps, caused a loss of about $1,000. But even taking that into account, we think it is not shown that the deceased was insolvent in December, 1875, or even that he was in such a condition pecuniarily that it was a fraud on creditors to release or give away these notes. Insolvency is to be proved, not presumed. (*Phillips* v. *Wooster*, 36 N. Y., 412; *Carr* v. *Breese*, 81 id., 591.) This creditor was the wife of the deceased, lived with him all his life on good terms so far as appears. His property was tangible, much of it in land. It was not subject to the contingencies of the market. She could have collected her debt out of the farm or the New York property. It is impossible for us to believe that there was any intent to defraud her, or to see that the circumstances showed an actual fraud.

But the respondents urge that even if the surrogate was in

error in charging the executor with the $11,175 note, yet that he also erred in not charging him with a certain $6,000 payment, and that, therefore, the decree should only be modified. The facts are these : The attorney for the deceased, in the action against Schuyler, received, in New York, $6,500 on account of that action at half-past nine A. M., October 10, 1881. He learned that deceased was at the point of death. He sent, on that day, his check for $6,000 (deducting $500, his fee), to Asa B. Kellogg, at his office in New York, Mr. Kellogg having been for many years the agent of the deceased in his business. Mr. Kellogg was in Troy. The attorney told the person in charge of the office to telegraph Mr. Kellogg * * * that the money was there. The check was on a New York bank and to the order of A. B. Kellogg. The deceased died that day. The check was paid October twelve. On the fifteenth of October there was an unsettled account between the deceased and Mr. Kellogg, on which there was a large balance owing to Mr. Kellogg. Mr. Kellogg credits this check on his account and charges himself with the balance after such credit.

By section 2545 of the Code, an appeal brings up for review each decision to which an exception is duly taken by the appellant. Akin, the respondent, neither excepted or appealed. The special guardian did not appeal. The general guardian did not except. Under that provision of the Code it seems to us that the question as to the $6,000 payment is not before us. If it were properly here, we should think the surrogate was right. The check came to Asa B. Kellogg's possession before the death of the deceased, and might properly have been credited on the running account which Kellogg had with the deceased. The fact that the drawer of the check had the power to forbid its payment does not touch the question between Kellogg and the deceased.

Again, the appellant urges that the surrogate erred in surcharging the executor with $590 for moneys claimed to have been paid by him to the deceased. The ground of error is that the executor was not allowed to testify as to these payments. He claims that the previous examination by the contestants authorized him to testify in his own behalf. The principle is plain enough. (*Merritt* v. *Campbell*, 79 N. Y., 625.) The difficulty is in applying it. The executor has charged himself with a balance of $1,152, due from

him to the decedent. This was the balance of an account running through several years, of which account the items making up the $590 were a part.

The contestants, against the executor's objection, were allowed to ask, "How was that $1,152 made up?" He answered, "It was the balance of money that I had received after paying out indebtedness for him." The executor urges that this inquiry, and other questions by the contestants in regard to items in the account, had so opened the matter that he should have been allowed to testify to payments in that account alleged to have been made by him to the deceased.

From the case, as it appears before us, we find it difficult to determine whether the subject was so opened by the contestants as to give the executor the right thus to testify. In the view we have above taken the question is practically immaterial.

Nor is it really material to decide the question whether Alletta A. Akin is a creditor, the negative of which is urged by a legatee. Her claim seems to have been admitted by the executor; it is his accounting which is before us.

| | | |
|---|---:|---:|
| By the decree the executor was charged with a total of, | $66,548 | 11 |
| Credited with a total of.......................... | 35,224 | 43 |
| "Leaving a balance applicable for payment of debts," | $31,328 | 68 |
| Deduct amount of note........................... | 16,969 | 90 |
| Showing a balance, applicable to costs, commissions and debts .................................... | $14,353 | 78 |

The decree should be modified accordingly. The charge of $16,969.90 should be struck out, and the executor should pay to Alletta A. Akin her *pro rata*. Decree to be settled by LEARNED, J.

BOOKES, J., concurred.

LANDON, J.:

Concurring in the result upon the $11,175 note upon the facts, and upon the check of $6,000, because not excepted to, I do not assent to the opinion of the majority, that the surrogate did not have jurisdiction to charge the executor with the amount of the

$11,175 note. Section 2739 of the Code provides that upon the judicial settlement of the account of the executor, "where a contest arises between the accounting party and any of the other parties * * * respecting a debt alleged to be due by the accounting party to the decedent, * * * the contest must be tried and determined in the same manner as any other issue arising in the Surrogate's Court." Now the creditors, in order to get payment of their debts, allege that this note was due the decedent — not in his own right, it may be conceded, but as trustee for his creditors. The creditor can make this claim because the testator, to the extent necessary to pay his debts, held his property as trustee for his creditors, and, therefore, could not give it away to their injury.

Chapter 314, Laws 1858, gives to the executor power to disaffirm in the interest of creditors such a transfer. This executor, being the donee of the gift, did not disaffirm it. His interest was opposed to his duty. But he ought to have disaffirmed it, and because he voluntarily failed in duty, the surrogate has power to compel his performance of it. The statute authorizes the surrogate to control executors. (2 R. S., 220, § 1.) In such case the general creditor can invoke this remedy. The statute dispenses with judgment and execution. (*Southard* v. *Benner*, 72 N. Y., 424.) All the parties are before the surrogate, and, as held in *Hyland* v. *Baxter* (98 N. Y., 610), the surrogate has jurisdiction to determine questions, either legal or equitable, arising in proceedings, in the execution of powers expressly conferred and which must be decided therein. It may be the creditor has another remedy, but in no other way can he avail himself of the benefit of the act of 1858, and it is unreasonable that he should be deprived of the benefit of that act because the donee is also executor. *Richardson* v. *Root* (19 Hun, 473) was decided before that part of section 2739 of the Code, above quoted, became the law.

Decree modified by striking out charge of $16,969.94; the adjudication that executor pay Alletta A. Akin $6,291.42, and her counsel $609.10, reversed; otherwise affirmed, executor to have costs of appeal against Alletta A. Akin.