## ISAAC McCONIHE, APPELLANT, *v.* GEORGE M. DERBY AND OTHERS, RESPONDENTS.

*Fraudulent conveyances — vendors, after a sale, dealing with property as their own — when the fraudulent vendee is liable to creditors.*

The sons of one George M. Derby, being apprehensive that they were about to fail in a hotel business which they were conducting, gave to their father, to whom they were indebted at the time, a bill of sale of their stock in trade under an agreement that they might remain in possession of the property, dispose of it at their pleasure, continue their business, and from its profits and the sale of said property pay their creditors, other than George M.

A few months later George M. took possession under his bill of sale of what property remained, and subsequently disposed of most of it.

In an action brought by a judgment-creditor of the sons, whose debt existed at the time the bill of sale was executed, to set aside the same as fraudulent:

*Held,* that the agreement of George M. with his sons was fraudulent as to the creditors of the sons.

That as George M. had taken possession of the remaining property, and sold most of it, he was liable to that extent to the creditors of his sons.

*Semble,* that if it had been agreed that the moneys received by the sons upon any sales made by them should be at once applied upon their debt to their father, the agreement might have been valid, although such moneys were not paid over to him.

APPEAL by the plaintiff Isaac McConihe from a judgment, entered, upon the verdict of a jury, in the office of the clerk of Clinton county on the 12th day of February, 1890, dismissing the complaint as to the defendants, George M. and Charles C. Derby, separately, with costs to each, after a trial at the Clinton Circuit before the court and a jury, with notice of an intention to bring up for review upon such appeal the order directing the entry of such judgment.

*Riley & Conway,* for the appellant.

*Beckwith, Barnard & Wheeler* and *W. L. Pattison,* for the respondent Charles C. Derby.

*G. H. Beckwith,* for George M. Derby, respondent.

LEARNED, P. J.:

This is an appeal by the plaintiff from a judgment in favor of the defendants. The action was brought by a judgment-creditor to set aside a bill of sale of personal property as fraudulent and void. The case came on for trial at a Circuit Court and a jury was impanneled. The court submitted to the jury the question whether the bill of sale was made with intent to defraud creditors. The jury answered in the negative and the court adopted the finding and found other facts.

Charles and Frank Derby were carrying on a hotel on the 10th of July, 1886, and were in possession of goods and chattels consisting generally of the hotel, furniture, table articles, liquors, cigars, provisions, horses and wagons, worth about $1,400. They owed the plaintiff about $252, and their father George M. Derby about $1,400, and he was their indorser for about $1,000. At this time they were threatened with insolvency and they executed to their father a bill of sale of all the said goods and chattels and gave him a mortgage on real estate for $500. At the time of executing said bill of sale it was agreed between George M. and said Charles and Frank that they, Charles and Frank, should remain in the possession and management of said property, and sell and dispose of it at their pleasure, and continue the hotel business, and from the avails of sales and profits of the hotel business they should pay on their indebtedness, other than such as they owed said George M. The said Charles and Frank did continue in possession of this present property, handling it as part of the hotel business, down to the time of the auction sale in October, and sold to whom they chose any part of it. This was with the consent of George M. George M. took the bill of sale as security, and because he was afraid his sons could not pull through as he states. He made no assertion of ownership until the time of the auction sale. On August 6, 1886, Frank sold out to Charles, and Charles continued the business until the auction sale. On the 6th of October, 1886, George M. took possession of the property, or such of it as remained, and caused it, or the principal part of it, to be sold at auction. According to the testimony of Charles everything was sold at the auction sale, except the whisky, the cigars and the horse. In one part of his testimony he says, also, that the pool table was not sold at the auction. But evidently

George M. took possession of everything which remained. The whisky was rolled over to Mr. Stackpole's store, on storage, after the auction, and some of it was afterwards taken from that place by Charles.

The plaintiff recovered a judgment against Charles and Frank January 22, 1888, for the aforesaid indebtedness, existing at the time of the bill of sale, and issued execution thereon, which was returned unsatisfied June 9, 1888.

We suppose the principle is settled that where, at the time of the execution of a chattel mortgage, it is agreed between the parties that the mortgagor may go on and sell the stock and use the proceeds generally in his business, the transaction is fraudulent in law as against creditors of the mortgagor. (*Southard* v. *Benner*, 72 N. Y., 424.) And such an agreement may be inferred from the acts of the mortgagor in selling the property and applying the avails to his use with knowledge of the mortgagee. (*Potts* v. *Hart*, 99 N. Y., 168.) It is true, as held in *Brackett* v. *Harvey* (91 N. Y., 214), that an agreement that the mortgagor may sell the property and apply the avails on the mortgage debt is valid. But that was not the agreement in this case. It was not understood that the avails of the goods sold should be applied on George M. Derby's debt. If that had been the agreement, then such avails would have been deemed to have been received by the mortgagee and would be applied on his debt, although they were not actually paid over to him. (*Conkling* v. *Shelley*, 28 N. Y., 360, and *Brackett* v. *Harvey*, *ut supra*.)

But where the agreement is that the mortgagors shall go on with their business, selling as they choose, and paying debts as they choose, there, plainly, the transaction is a fraud on creditors. And in this case there is the additional fact that there was no change of possession, but Charles and Frank continued to manage and control the business as before.

In this case the defendants claim that the bill of sale was valid, because the agreement was that the vendors should sell the property in their ordinary business and pay debts other than that of the vendors. But that agreement cannot be upheld. If the agreement had been that the avails of sales were to be applied on the debts of George M., then every sale would have reduced his debt so much,

whether he had received the avails or not. (*Conkling* v. *Shelley*, *ut supra.*) But not so as to other creditors. They had not made the vendors their agents to sell the property. And this bill of sale prevented these creditors from collecting their debts out of the property. In fact, it was a complete scheme to permit Charles and Frank to do business without paying their debts, and to put their property where no creditor could reach it, whether or not the parties understood its effect.

Defendants claim that plaintiff cannot recover because he did not show that some of the property or its proceeds was in the possession of George M. when plaintiff recovered judgment. They rely on the principle that when there has been a sale, fraudulent as to creditors, the vendee may return to the vendor the property, and thus escape any liability thereafter. (*Cramer* v. *Blood*, 57 Barb., 155.) The case of *Murphy* v. *Briggs* (89 N. Y., 449) turns largely on the recording statute.

There may be cases where this principle and others analogous will apply. For instance, if a general assignment for the benefit of creditors is declared fraudulent, the assignee would be credited for payments made by him prior to the action in which the fraud is declared. But the present case is quite different. Here there was no change of possession. The bill of sale is, therefore, presumed fraudulent. On the facts proven, it must be held that that presumption was not overcome. (2 R. S., m. p. 136, § 5; *Southard* v. *Benner, ut supra.*) The creditors include all persons who are creditors at any time while the goods were in the assignor's possession. (Sec. 6.) But such creditors cannot bring an action to set aside the bill of sale until after judgment and execution. Therefore, this plaintiff is a defrauded creditor and may pursue this property. George M. Derby was a party to the fraud. He has never relinquished the rights he claimed to get by the bill of sale. He has never rescinded that bill of sale, or surrendered to the vendors his rights under it. He took possession of the residue of the property by virtue of such bill of sale, and sold part of it by the same authority. He applied the avails on his own debt owing from Charles and Frank, or in payment of money borrowed by him and lent to them. He cannot be permitted to retain the benefit of his illegal transaction. (*Stimson* v. *Wrigley*, 86 N. Y., 337; *Dutcher* v.

*Swartwood,* 15 Hun, 34 ; *Goold Co.* v. *Maheady,* 38 id., 294 ; *Murtha* v. *Curley,* 90 N. Y., 372 ; *Loos* v. *Wilkinson,* 113 id., 485.)

There are some articles which it is said that Charles and Frank did not own, because they were purchased conditionally and had not been paid for, and it is stated that these were taken by the persons who sold them. If this is so, of course George M. would not be liable for these. But as to all the property of Charles and Frank, of which George M. took possession about the time of the auction sale, we think he is liable and should account, whether he has sold the same or not.

The judgment should be reversed, new trial granted, costs to abide event.

LANDON and MAYHAM, JJ., concurred.

Judgment reversed, new trial granted, costs to abide event.