JESSE R. SHRECK, TRUSTEE, APPELLEE, v. ELIZA E. HANLON, APPELLANT.

FILED JUNE 22, 1905. No. 13,871.

1. **Bankruptcy:** CREDITORS' SUIT. A trustee in bankruptcy, acting for the creditors of the bankrupt, may maintain an action in the nature of a creditors' bill to set aside a fraudulent conveyance, without reducing the claims of the creditors to judgment.

2. ———: APPLICATION FOR DISCHARGE. The question of fraud in conveyances made prior to July 1, 1898, could not be determined in a hearing on application by a bankrupt for his discharge in the bankrupt proceedings. *Paxton v. Scott*, 66 Neb. 385, followed and approved.

3. **Evidence** examined, and *held* sufficient to support the judgment.

APPEAL from the district court for Clay county: ED L. ADAMS, JUDGE. *Affirmed.*

*John C. Stevens*, for appellant.

*Thomas H. Matters* and *Ambrose C. Epperson*, contra.

OLDHAM, C.

This was an action in the nature of a creditors' bill instituted by the trustee in bankruptcy of the estate of David Hanlon, a bankrupt, for the purpose of setting aside the conveyance of 480 acres of land situated in Clay county, Nebraska, to Eliza E. Hanlon, wife of the bankrupt, as having been made in fraud of his creditors. The cause was instituted in the district court for Clay county, and is here a second time for review. At the first hearing of the cause in the district court a judgment was rendered in favor of the defendants. This judgment was reviewed on error and reversed by this court. *Shreck v. Hanlon*, 66 Neb. 451. The issues in the case are set forth in this opinion, and the questions determined, which are now governed by the rule of "the law of the case," are that the plaintiff has legal capacity to maintain the action; that the action was not barred by the statute of limitations when the cause was instituted; that it is not a sufficient defense to the action to show that the bankrupt had other property in his possession at the time the transfers were made which was sufficient to satisfy the creditors, if the conveyance was, in fact, fraudulent and made for the purpose of defeating claims of creditors, and at the time of commencing the action the grantor in the conveyance had no property subject to execution, out of which the claims could be made. When the cause was reversed and remanded, in pursuance to the directions of our first opinion, a new trial was had to the court, and plaintiff's bill was dismissed as to the quarter section of land occupied by defendants as a homestead, and the conveyance from the husband to the wife of the other two quarter sections was set aside as fraudulent. To reverse this judgment, defendant Eliza E. Hanlon appeals to this court.

The petition was instituted by the trustee in bankruptcy to subject the lands in dispute to the payment of the following claims, which are admitted to have been properly filed, approved, and allowed by the referee against the estate of the bankrupt: Claim of the First National Bank of Harvard for $445.45 and interest; claim of the First National Bank of Harvard for $33.85 and interest; claim of Jesse R. Shreck for $20.20 and interest; claim of S. J. Rice & Co., for $74.50 and interest; claim of the Commercial State Bank of Clay Center for $170.88 and interest; claim of the Phœnix Insurance Company of Brooklyn, New York, for $170.88 and interest. But one of these claims, that of the Commercial State Bank of Clay Center, has ever been reduced to judgment and had execution returned unsatisfied thereon prior to its being filed with the referee, and it is now contended by appellant that this is the only claim on which a creditors' action will lie at the suit of the trustee to set aside the alleged fraudulent conveyance of the real estate in controversy. This question, however, has been determined against the contention of the appellant in *Sheldon v. Parker*, 66 Neb. 610, wherein this court held:

"The bankrupt act vests the assignee with title to all property conveyed by the bankrupt in fraud of creditors, and he may proceed to recover the interest of the bankrupt in the property, whether any creditor was in position to attack the transfer or not."

And again in *Hood v. Blair State Bank*, 3 Neb. (Unof.) 432, it was specifically held that a trustee in bankruptcy, acting for the creditors of the bankrupt, may maintain an action in the nature of a creditors' bill to set aside a fraudulent conveyance, without reducing the claims of the creditors to judgment. While we are aware that we are not bound by the language and reasoning of this opinion, yet the conclusion reached on this question is in harmony with the doctrine announced in *Sheldon v. Parker, supra,* and is supported by the holding in *Southard v. Benner*, 72 N. Y. 424.

The next point urged is that the question involved in this controversy was adjudged adversely to the claim of the appellee, and more particularly the claim of the Commercial State Bank, by the United States district court, because it is admitted in the record that this creditor objected to Hanlon's discharge in bankruptcy because at the time of the commencement of the action he was the equitable owner of the land in controversy, and that these objections were overruled by the federal court, and the discharge granted.    This question has also been determined against the contention of appellant in the case of *Paxton v. Scott,* 66 Neb. 385, in which it was held that the question of fraud in conveyances made prior to July 1, 1898, could not be determined in a hearing on application by a bankrupt for his discharge in the bankrupt proceedings. The conveyances in the instant case were made in 1895. Consequently, even if fraudulently made, such fact would not prevent the bankrupt from having his discharge in the federal court.    Again, as further held in *Paxton v. Scott, supra,* "the discharge of a bankrupt is only personal to himself, and does not affect any lien, either by contract or by judicial proceedings, against property."

The only question then remaining is as to the sufficiency of the evidence to support the judgment.    We have made a careful examination of the evidence contained in the bill of exceptions for the purpose of arriving at an independent conclusion on the question of the good faith of the transfer from the husband to the wife.    In the first place, the relationship existing between the parties rendered the transfer of practically all of the available assets of the grantor presumptively fraudulent as to existing creditors. While there is a suggestion in the evidence offered by defendant that David Hanlon owned other property of a personal nature at the time of the transfer, yet nothing is pointed out which it is conceded that he did own, except some sort of a land contract in the state of Colorado, which is admitted to have been of the value of $60, and which is all the property that actually passed into the

hands of the trustee. The evidence of defendant shows that they removed to Nebraska in 'the year 1884; that the quarter section of land now occupied by them as a homestead was purchased by the husband; and that a deed to it was made in his name, but it is claimed that the purchase price was paid by money which the wife procured from her father, that is, that she got $1,100, and purchased the home quarter section with this sum, subject to a mortgage of $1,000. About eleven years later another quarter section was purchased for the sum of $3,000. This purchase was effected by the payment of $1,000 in cash, and the execution of a mortgage for $2,000 which still remains upon the land. Defendant claims that the $1,000 paid on the purchase was procured from the home quarter, which in reality belonged to the wife. This second quarter was deeded to the husband, and mortgaged by him to secure the remainder of the purchase price. It is likewise claimed that the third quarter was paid for by sale of stock and grain raised on the home place. Appellant admits that she knew that all this land was held in the name of the husband; that she knew that he was buying and selling stock, and depositing the funds in the bank in his own name; that he had been farming on lands leased in his own name prior to the conveyance to her. She also admits that she knew he was in debt when he made the conveyance to her. With reference to this fact, her testimony is as follows:

Q. You say, when you learned that Mr. Hanlon was signing notes as surety, you demanded that the farms be put in your name?

A. I demanded that they were mine, and that I wanted them.

Q. You wanted the farms in your name?

A. I wanted my property.

Q. Because you learned that he was involved?

A. Because I learned that he was signing notes for everybody, and that he was prey for 'most anybody that wanted to prey on him, and I wanted my place to keep my home there. * * *

A. I demanded that they be put in my name, because it was mine, and I wanted it, so that he wouldn't run through with it.

We think, in view of this testimony, that the evidence is amply sufficient to sustain the judgment of the trial court, and we therefore recommend that the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons given in the above opinion, the judgment of the district court is

AFFIRMED.