DOBSON et al. v. SNIDER et al.

(Circuit Court, D. Minnesota, Fourth Division.   October 25, 1895.)

FRAUDULENT CONVEYANCES—EVIDENCE.

In a suit to set aside certain conveyances of land as made in fraud of creditors, it appeared that S., the grantor, had been for some years a large borrower of money from the U. Bank, of which he was a director, as well as from other parties; that in November, 1890, his indebtedness to the bank amounted to $44,000, and in that month he executed to one K., a director of the bank, a deed of certain valuable lands, absolute on its face, but intended as a mortgage, in which a consideration of $85,000 was named; that the deed was not recorded until more than a year later, at a time when notes discounted for S. by complainants, in the belief that he owned the land, had been protested, and shortly before S. was obliged to resign his position as director of the U. Bank, on account of financial embarrassment. *Held*, that the circumstances showed a desire and intent on the part of the bank and S. to shield and benefit S. at the expense of some one else, and that the deed should be declared void as against complainants.

This was a suit by John and James Dobson against Samuel P. Snider, the Union Bank of Minneapolis, and others, to set aside certain deeds as fraudulent.

The bill sets forth that on April 6, 1892, complainants obtained a judgment against defendant Snider in the sum of $10,295.82, on two promissory notes, of $5,000 each, executed by M. L. Hallowell, Jr., & Co., a partnership, consisting of M. J. Hallowell and S. P. Snider, to the order of and indorsed by the latter, on which execution issued, and was returned wholly unsatisfied; and on September 8, 1892, a transcript of the judgment was filed in the office of the clerk of the district court in Hubbard county, Minn., where certain lands in controversy in this suit are situated. It is further alleged that, in 1891, Snider, being largely engaged in real-estate and other transactions in Minnesota and elsewhere, was a large borrower of money, and in order to obtain a high rating, and thus raise his credit, he made false statements of his assets to a mercantile agency; that the notes in question were offered for sale to complainants, who, applying to Bradstreet's Agency, were informed by it that on January 1, 1889, Snider had over his own signature stated to the agency his net assets to be $1,183,000, with $92,000 liabilities; that in said statement Snider represented himself as the owner of pine lands in Minnesota, valued at $125,000, and, at the time of the purchase of the notes in question, deeds in his name to large and valuable tracts of pine lands appeared on record in the counties of Cass and Hubbard, Minn.; that complainants, relying upon the statements received from the agency, and on the fact that Snider was the owner of the pine lands aforesaid, purchased the notes in question before maturity; that Snider was a large borrower from the Union Bank of Minneapolis, of which he was a director, and the bank, on November 21, 1890, in order to secure itself, took two deeds absolute on their face, from Snider and wife, of these pine lands in Cass and Hubbard counties, to one Austin F. Kelley, a director of the bank; that the deeds were not recorded until November 23 and December 5, 1891, shortly before the maturity of the notes in question, and before complainants could obtain judgment and levy on said lands; that they were withheld from record by agreement between the bank and Snider, in order that the credit of the latter might not be injured, and he be prevented from borrowing other sums of money; and that defendants now admit that these deeds were not absolute conveyances, but were in the nature of mortgages. Complainants ask that these conveyances be declared null and void, and for other relief.   The answers admit the execution of the deeds to secure Snider's indebtedness to the bank and for future advances; deny any agreement to withhold the same from record; and allege that they were intended to be recorded, but, through oversight on the part of the president of the

bank, were not placed on record when given; deny that Snider ever made false representations to any mercantile agency; allege that the deeds were given and received in good faith; and deny any combination, confederacy, or agreement as in the bill charged.

Lewin W. Barringer (Keith, Evans, Thompson & Fairchild, of counsel), for complainants.

Cross, Carleton & Cross and F. B. Hart, for defendants.

NELSON, District Judge. The main issue is the bona fides in the execution and recording of the deeds, so that the right of complainants to the relief sought in their bill must depend upon whether they have proved the fraud set forth therein. While there is little or no conflict in the testimony, there is a sharp contention between counsel as to the credit to be given to the same. Snider, and Neiler the president of the bank, with whom the negotiations were had, testify that there was no agreement or understanding not to record the deeds, and that the failure so to do was due entirely to an oversight on the part of Mr. Neiler. Counsel for complainants insist that the surrounding facts and circumstances negative this testimony, and that the failure to record was due to a desire and intent on the part of the bank not to injure the credit of Snider, and to give him an opportunity to continue borrowing money elsewhere, which he could not have done had the deeds been placed on record.

The facts are as follows: Snider had been for some years a large borrower of money from the bank on his individual paper. In December, 1889, March and June, 1890, this indebtedness amounted to $39,000, and in October and November, 1890, it increased to $44,000. On November 21, 1890, Snider and wife executed two deeds absolute on their face, of these pine lands in Cass and Hubbard counties to one Kelley, a director of the bank, to whom, however, they were never delivered, with a stated consideration of $85,000. These deeds were not filed for record until more than a year after their execution, but were recorded a short time before Snider was compelled to resign his position as a director of the bank on account of financial embarrassments, and after these notes of complainants had been protested.

It is admitted that these deeds were in reality only mortgages given as security for the debt due the bank; but they state nowhere that they were given to Kelley as trustee, or that he was connected with the bank, and, when recorded, gave no notice save of an absolute sale for an ample consideration. The question now is, will a court of equity declare this to be an honest and proper transaction, adopt it, and stamp it with its approval? It is true that the mere nonrecording of these deeds until some time after their execution is not necessarily a badge of fraud, and that forgetfulness may be accepted as an excuse for failure to record; but the giving of the deeds with a consideration larger than the actual one, and the failure to place them on record for more than a year by the bank for whose use and benefit they were given, are matters to be taken into consideration, in the light of the surrounding facts and circumstances, in determining whether or not this was a valid and bona

fide transaction.    If a grantee fails to record an instrument, he does so at his peril, and accepting the testimony of Mr. Neiler that the failure to record the deeds, the consideration for which exceeded one-tenth of the capital stock of the bank, evidenced by notes frequently renewed, was due to an oversight on his part, no complaint can be made if such negligence results in loss.    While there may have been no agreement that the deeds should not be recorded, it is impossible to resist the conclusion that there was a desire and intent on the part of the bank and Snider to shield or benefit the latter at the expense of some one else.    Had the intent of the bank been merely to protect or secure itself, as it had a perfect right to do, a mortgage or a deed for the amount of the indebtedness would have sufficed.    In my opinion, the action of Mr. Neiler, the president of the bank, enabled Snider to keep up a credit to which he was not entitled, and, on the strength thereof, to obtain money from complainants, whereby a fraud in law was perpetrated upon them.

A decree will be entered declaring the deeds of conveyance from Samuel P. Snider to Austin F. Kelley null and void as against the rights of complainants herein.