BROWN v. EASTON et al.

(Circuit Court, N. D. Iowa, E. D. January 6, 1902.)

1. CREDITORS' SUIT—EVIDENCE TO IMPEACH CONVEYANCE—FAILURE TO RECORD DEED.

The fact alone that deeds conveying property were withheld from record by the grantee for a number of years affords no ground for setting aside such deeds in a creditors' suit by a judgment creditor of the grantor whose judgment was not obtained until after they were recorded, although it is entitled to consideration as evidence on the question of the bona fides of the transaction; nor does the further fact that during such time portions of the lands were sold and deeds were made to the purchasers by the grantor, who still held the title of record, sustain a claim of fraud, where it is shown that the proceeds were paid to the grantee.

2. VENDOR AND PURCHASER—BONA FIDE PURCHASER FROM HOLDER OF RECORD TITLE—NOTICE OF UNRECORDED DEED.

The president of a national bank in Iowa, who was largely indebted to it, caused a number of tracts of land in different counties in the state, which were assigned to him in the dissolution of a partnership of which he was a member, to be deeded to the bank to secure his indebtedness. The deeds were delivered to him, but were not recorded, and he thereafter induced the grantor to convey some of the lands to himself, and such deeds were recorded. Being subsequently in urgent need of money, he induced his brother, who resided in New York, to indorse his note to be discounted, and to pay the same, receiving as a consideration a conveyance of one of such tracts of land. The brother knew that partnership lands had been conveyed to the bank as security, but had no knowledge that this tract was among them. *Held*, that he was not chargeable with notice of such fact, and was protected in his title, as a bona fide purchaser for value, from the holder of the record title.

James H. Shields, for complainant.

Lacy & Brown, for defendants.

SHIRAS, District Judge. From the record in this case it appears that on the 10th day of November, 1896, the First National Bank of Decorah, Iowa, being found to be in an insolvent condition, was closed for business by order of the comptroller of the currency, and on the 24th day of the same month William H. Dent was appointed receiver of the insolvent corporation, and duly qualified as such officer. At the date of the failure of the bank, and for many years previous thereto, James H. Easton was and had been the president thereof, and had largely controlled the management of the affairs of the institution, being also the owner of 455 shares of the capital stock, of the par value of $100 per share. On the 11th day of February, 1897, the comptroller of the currency levied an assessment of 100 per cent. upon the capital stock of the bank, and to enforce the payment thereof the receiver brought suit in this court against the said James H. Easton, and on the 30th day of April, 1897, a judgment in favor of the receiver and against the said Easton was rendered in the sum of $46,097.07 and costs. On the 25th day of April, 1897, judgment was entered in this court in favor of the receiver and against the said Easton for the sum of $5,775.50 and costs, in an action based upon certain promissory notes executed or indorsed by him. These judgments remaining unpaid, executions thereon were issued and returned unsatisfied, and there-

upon the receiver brought this suit in equity, charging in the bill that James H. Easton had an interest in, or was the owner of, certain lands situated in the counties of Allamakee, Chickasaw, Howard, Hancock, Sioux, Winneshiek, and Winnebago, in the state of Iowa, the title thereto having been transferred to Frederick S. Easton without consideration, and for the purpose of placing the realty beyond the reach of the creditors of James H. Easton; and the prayer of the bill is that it be decreed that Frederick S. Easton holds the title to the realty, not in his own right, but as trustee for James H. Easton, and that the same be declared subject to the judgments held by complainant as receiver. Some time after the institution of the proceedings in equity William H. Dent resigned the receivership, and was succeeded therein by Edwin E. Brown, and by order of court he has been substituted as the complainant in this suit.

The defendants answered the bill, denying the charges of fraud, and averring, in substance, that all the transfers of realty made by James H. Easton to Frederick S. Easton were made for full value, in good faith, and that James H. Easton had no interest whatever in the realty in question.

The evidence introduced in the case shows that Frederick S. Easton is a younger brother of James H. Easton, residing at Lowville, in the state of New York, and is and has been for years cashier of the Black River National Bank of Lowville; that James H. Easton, residing at Decorah, Iowa, for the past 40 years had acted as agent for William L. Easton, his father, for his brother-in-law D. C. West, and his sister Ella Rullison, with respect to lands owned by these parties in the states of Iowa and Minnesota. Upon the death of the father, W. L. Easton, in 1865, Frederick S. Easton became executor of his estate; and on the death of D. C. West, in 1880, he, in conjunction with his sister Emma H. West, became executor and trustee under the will of D. C. West, and he also became a trustee for his sister Ella Rullison; and in these several capacities he became charged with the duty of looking after the investments of these several estates in lands in Iowa and Minnesota, the said James H. Easton continuing to look after the payment of taxes, collection of rents, and contracting for and selling portions of the lands, and in so doing, and also for money borrowed, he had incurred up to August 11, 1893, an indebtedness to the West estate amounting to $27,839.91, and to the Rullison trust the sum of $3,531.14, which amounts were evidenced by promissory notes executed during the years 1882 to 1891, both inclusive. During the year 1893 Frederick S. Easton had been pressing these notes for payment, and finally, in September of that year, an agreement was reached between James H. Easton and Frederick S. Easton for the payment of the sums due by transferring certain lands from James H. to Frederick S. Easton. The agreement thus reached was carried into effect by the execution of the necessary deeds on the part of James H. Easton, and the surrender to him of the notes held by Frederick S. Easton.

This transaction is questioned by the complainant, and largely for the reason that the deeds from James H. Easton, bearing date in 1893, were not recorded until in 1896, and just about the time when

112 F.- 38

the First National Bank of Decorah ceased to do business and was placed in the hands of the receiver, and in the meantime James H. Easton exercised an apparent ownership over the property, in that he continued to look after the renting, the payment of the taxes, and the selling of the land. The evidence, however, clearly sustains the facts, already recited, showing the existence of an actual indebtedness existing in 1893 from James H. Easton, which was canceled by the conveyance of the realty to Frederick S. Easton, and, this fact being established, then the failure to record the deeds would not invalidate the transfers, except in favor of subsequent innocent purchasers.

The reason assigned by Frederick S. Easton for not recording the deeds at the time of their delivery to him is that at that time, in 1893, a panic prevailed in the business world, and that if it had appeared that James H. Easton, who was president of the bank, was transferring large amounts of his property, it might have had the effect of causing a run upon the bank, and therefore he withheld the deeds from record, although there was no agreement or understanding between the brothers that this should be done. There can be no question that such action on his part throws suspicion on the transaction, and justified the receiver in making it the subject of judicial investigation; yet, in the light thrown thereon by the evidence introduced, it cannot be held that the failure to record the conveyances invalidates them, or that the evidence justifies the finding that the transfers to Frederick S. Easton were without consideration, or that he holds the title in trust for his brother James H. The question presented is not that which arises when one becomes a purchaser in some form of the premises from or under the grantor, during the time the deed is withheld from the record, nor the question which arises when persons sell property on credit to the grantor in the reasonable belief that he is the owner of the property the title to which appears of record to be in him. The only ground upon which the complainant can secure the relief sought in the bill filed in this case is by proving that James H. Easton has in fact an interest in or ownership of the realty, or some portion of it; the title thereto being in truth held by his brother in trust for him.

As already said, the evidence fails to sustain these averments of fraud or want of consideration, and therefore it must be held that the conveyances executed in September, 1893, and covering lands in Allamakee, Howard, Winneshiek, Winnebago, and Chickasaw counties, were and are valid, and the lands conveyed thereby cannot be subjected to the judgments held by complainant against James H. Easton. In the settlement made in 1893 there was included a lot in Duluth, Minn., which was subject to a mortgage which Frederick S. Easton refused in the first instance to take as part of the settlement, but it was included on the promise of his brother to substitute therefor his interest in the lands in Chickasaw county, which he held in common with one A. E. Bigelow. Subsequently Bigelow and James H. Easton made an amicable division of their lands in that county, and in May, 1894, Easton's interest therein was conveyed to Frederick S. Easton, who thereupon re-

turned the deed of the lot in Duluth to his brother, taking in lieu thereof the lands in Chickasaw county, and this transfer must be held valid for the reasons that would have sustained the transfer of the lot in Duluth which was part of the settlement reached in September, 1893. After the delivery of the deeds executed in pursuance of the settlement of 1893, James H. Easton continued to look after the lands, paying taxes, collecting rents, contracting for sales thereof, and making contracts for sales, sometimes in his own name, and so conducting himself with respect thereto that third parties in dealing with him would have been justified in assuming that he was the owner of the realty, the record title to which stood in his name. In carrying out the contracts of sale made by James H. Easton, in some instances deeds were made direct by him to the purchaser, but the proceeds realized were accounted for to Frederick S. Easton, for the benefit of the trusts he represented. Although this method of dealing with these lands would afford sufficient ground for estopping Frederick S. Easton from asserting his title thereto as against any third party who might have innocently dealt with and taken title from James H. Easton in the belief that he was in fact the owner of the land, it will not sustain the claim that James H. Easton is in fact the owner thereof. The deeds transferring these lands had all been placed on record before the judgments in favor of complainant were rendered, and there was no apparent title in him upon which the lien of the judgment could be made to operate. Under these circumstances, it must be held that complainant has failed to make out a case entitling him to subject the lands in the counties of Allamakee, Chickasaw, Howard, Winnebago, and Winneshiek to the payment of the judgments against James H. Easton.

With respect to the land in Sioux county, it appears that Frederick S. Easton, in 1893, loaned to the First National Bank of Decorah $5,000, taking collateral security therefor, including a promissory note for $4,000 executed by Pitts & Kessey, of Orange City, Iowa, which had been given by them to James H. Easton under a contract for the purchase of land in Sioux county. Under the provisions of this contract, Pitts & Kessey, upon payment of their note, would become entitled to a conveyance of the land by them contracted for, and to carry out this agreement James H. Easton deeded the land to Frederick S. Easton, to whom the contract of purchase had been assigned, and upon payment of the note he deeded the land to G. W. Pitts, the latter conveyance being made before this suit was instituted, and it is thus made clear that James H. Easton has no interest in this land, the title to and ownership thereof being vested in G. W. Pitts.

This leaves for consideration the lands in Hancock county, which were conveyed to Frederick S. Easton by his brother by a deed dated October 30, 1896, acknowledged November 6, 1896, and filed for record in Hancock county November 10, 1896, being the day on which the bank ceased to do business. With respect to this transaction, Frederick S. Easton testified that in October, 1896, his brother came to Lowville, and endeavored to borrow from him the

sum of $6,000, stating that it was highly necessary for him to get this sum and pay it into the First National Bank of Decorah, Iowa; that he (Frederick S. Easton) stated to his brother that he did not have this sum at command, nor would he borrow it from the bank at Lowville, of which he was cashier; that after some further discussion he agreed that he would indorse James H. Easton's note for $6,000, making it payable to the American Exchange National Bank of New York City, and would agree with that bank to pay the note at maturity, if that bank would discount the note, and it was then agreed that, if the money was thus obtained, James H. Easton was to convey to Frederick S. Easton 280 acres of land in Hancock county, in payment or part payment of the indebtedness thus created in favor of Frederick S. Easton. In accordance with this understanding, a note for $6,000 was signed by James H. and indorsed by Frederick S. Easton, and the same was discounted by the American Exchange National Bank, and thereupon the lands in Hancock county were deeded to Frederick S. Easton. This note was subsequently paid by Frederick S. Easton, as is shown not only by his testimony, but by the letters written by the officers of the American Exchange National Bank, so that it is proven beyond question that Frederick S. Easton, as a consideration for the conveyance to him of the lands in Hancock county, paid to his brother the sum of $6,000, which was a full and sufficient consideration for the purchase thus made.

On behalf of complainant, it is contended that Frederick S. Easton cannot be deemed to be an innocent purchaser of these lands, because, when he purchased the same, he had notice of the rights of the First National Bank of Decorah thereto; it being claimed that the title thereto was in fact vested in the bank before the transfer to Frederick S. Easton. This contention is based upon the following facts: Prior to 1894, James H. Easton, T. W. Burdick, and George Q. Gardner had been jointly interested in dealing in wild lands, and in April, 1894, settlements between the parties were had, it being agreed that the partnerships existing under the names of James H. Easton (comprised of James H. Easton and Theodore W. Burdick) and James H. Easton & Co. (comprised of James H. Easton, Theodore W. Burdick, and George Q. Gardner) should be dissolved, and a proper division and conveyance of the lands owned by the named firms should be made; and by a written instrument dated April 26, 1894, and signed by James H. Easton and George Q. Gardner, it was agreed that the lands, which under the partnership settlements were to be conveyed by Burdick to Easton and to Gardner, were to be conveyed by Burdick to the First National Bank of Decorah, Easton being at this time the president, and Gardner the cashier, of the named bank. The conveyances thus agreed to be made to the bank were intended to secure to the bank the indebtedness due from Easton and Gardner, which was large in amount. In pursuance of this arrangement, T. W. Burdick executed in April, 1894, deeds to a large number of acres of land in Iowa to the First National Bank of Decorah, which were placed in the hands of James H. Easton, but which were not filed for record

in the office of the recorder of deeds of the counties wherein the lands were situated. One of the deeds thus executed conveyed the lands in Hancock county which are in dispute in this action. Subsequently Easton induced Burdick to deed a portion of the lands covered by the deeds to the bank, including those in Hancock county to himself, and as it would appear from a letter dated April 18, 1895, by Burdick to Easton, the latter sent to Burdick the deeds covering these lands, suggesting that he should hold these without canceling the same.

On behalf of complainant, it is contended that when the deeds to the bank were executed by Burdick, and were placed in the hands of Easton, the title to the lands thus deeded passed to the bank, it being the grantee named therein, and that there was a sufficient delivery thereof, in that it is clearly shown that when the deeds were executed it was the intent of Easton, Burdick, and Gardner alike that the lands should pass to the bank for its protection, and that Burdick, the grantor therein, delivered the same to Easton, he being the president of the bank, for the purpose of vesting the title in the bank.

Granting this contention to be well taken, it would follow that the execution of the second deed to Easton, and a subsequent conveyance by him, would be of no avail in favor of any one who took the conveyance from Easton with knowledge of the real facts; but, as the deeds to the bank were not placed of record, any one taking title for value from Easton as the owner of the record title would be protected in such purchase, unless he knew or was properly chargeable with knowledge of the rights of the bank.

As already stated, Frederick S. Easton bought 280 acres of the land in Hancock county, in November, 1896, from James H. Easton, in whom the record title then rested, and, to defeat the title thus conveyed, it must be shown that Frederick S. Easton, when the purchase was made, knew or was chargeable with knowledge of the fact that the land had been previously conveyed to the First National Bank of Decorah. Upon this issue it is shown on behalf of complainant that, on request of the directors of the bank, Frederick S. Eaton accompanied his brother to Washington in April, 1896, for the purpose of having an interview with James H. Eckels, who was then the comptroller of the currency, the interview being had upon the question of an assessment upon the capital stock of the bank, which was threatened by the comptroller unless the financial condition of the bank was bettered by a reduction of the indebtedness due it from its president, James H. Easton. At the interview with the comptroller there was a general discussion had, in which Frederick S. Easton participated, touching the condition of the bank, and in which discussion the fact was stated that James H. Easton had conveyed to the bank certain lands of the value of $30,000, which were of a character that would insure a prompt conversion of them into cash, which would be applied in payment of the indebtedness due the bank from James H. Easton.

In the deposition of Mr. Eckels, giving the facts of this interview, he states:

"So far as the value is concerned, I remember I made the statement that while they conveyed the lands, that that did not give what the bank needed, cash; that Mr. James H. Easton stated that the lands could be very shortly converted into cash, and were sufficient to take care of his indebtedness,—his direct indebtedness; and I remember, further, the statement—I think Mr. James H. Easton stated it to me—as to his brother being a man of considerable wealth, and his brother giving me to understand that, if possible, he would aid his brother James H. in straightening out his affairs with the bank."

This testimony, in connection with the other evidence in the case, shows that early in 1896 Frederick S. Easton knew that his brother was heavily indebted to the First National Bank, so much so as to imperil its solvency, and that he had conveyed to the bank lands of the value of $30,000 or more, but the evidence does not show that Frederick S. Easton had knowledge of the particular lands so conveyed. In his deposition Mr. Eckels testifies that in the interview had with him at Washington he does not recall that the number of acres conveyed to the bank was stated, and that no description of any particular land was given.

It does not follow, therefore, that, because this interview was had as testified to by the former comptroller, Frederick S. Easton knew that the 280 acres of land in Hancock county was included in the original deeds executed by Burdick to the bank, but which were never recorded. It may be said, in passing, that Frederick S. Easton denies that he had any such knowledge, and it does not seem reasonable, if he knew that these lands in Hancock county had been deeded to the bank, that he would have been willing to bind himself for the payment of $6,000 to the American Exchange National Bank in consideration of a transfer of these lands from a person who he knew had not the right to convey them to him.

The interview with the comptroller took place in April, 1896, and the sale of the lands in Hancock county was had in the following November, and there is no substantial evidence introduced upon which to base the finding that Frederick S. Easton, when he bought the lands in November, knew, or should have known, that they formed part of the lands which had been conveyed to the bank by T. W. Burdick in April, 1894, and his denial of all knowledge, sustained, as it is, by the potent fact that he assumed the payment of $6,000 to the American Exchange National Bank on the faith of the transfer of the lands to him, must therefore be accepted as true. Being, therefore, an innocent purchaser for value of the lands in Hancock county, his right thereto cannot be defeated by showing the execution of a deed to the First National Bank of Decorah of a prior date, but which deed was not recorded, and of which it is not shown that Frederick S. Easton had knowledge when he made his purchase, in November, 1896.

A serious question was presented with respect to the admissibility of the deposition of James H. Eckels, the same having been taken in a case between the same parties, touching the title to lands in Howard county, which case was brought and heard in the state district court for Howard county. If the court had sustained the objection to this deposition, it would have afforded good ground for

continuing the case, in order to enable the complainant to retake the deposition, and it was therefore deemed better to admit the deposition, especially in view of the fact that the conclusion reached in the case is favorable to the defendant who interposed the objection.

Complainant's bill is therefore dismissed on the merits, at his costs.