## In re THOMPSON.

### (District Court, D. New Jersey. May 21, 1913.)

1. BANKRUPTCY (§ 140*)—PERSONAL PROPERTY—TITLE—EVIDENCE.

On an issue as to the ownership of a dredge in the possession of the bankrupt at the time of adjudication, evidence *held* to require a finding that it belonged to claimant, and not to the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

2. WITNESSES (§ 144*)—TRANSACTION WITH PERSON SINCE DECEASED—PERSONAL COMMUNICATIONS—EVIDENCE—BANKRUPTCY.

2 N. J. Comp. St. 1910, pp. 2217–2219, §§ 1–3, providing that a plaintiff may not testify to any transaction with or statements by a person since deceased against his representative, etc., having been made applicable to bankruptcy proceedings by U. S. Rev. St. § 858, as amended by Act June 29, 1906, c. 3608, 34 Stat. 618 (U. S. Comp. St. Supp. 1911, p. 271), a claimant of personal property against the trustee of a deceased bankrupt was not entitled to testify concerning his agreement with the bankrupt for the use of the property.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 625–643; Dec. Dig. § 144.*]

3. BANKRUPTCY (§ 151*)—PERSONAL PROPERTY IN POSSESSION OF BANKRUPT—TRUSTEE'S TITLE.

Only such title to property in possession of the bankrupt at the time of the filing of the petition vests in the trustee as was in the bankrupt, or such as the trustee could obtain by asserting the rights and powers of the creditor holding a legal or equitable lien thereon provided by Bankr. Act July 1, 1898, c. 541, §§ 47a2, 70a, 30 Stat. 557, 565 (U. S. Comp. St. 1901, pp. 3438, 3451).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 193; Dec. Dig. § 151.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. Evidence (§ 273\*)—Declarations Against Interest—Privity of Estate.**

A bankrupt's trustee being in privity of estate with the bankrupt, the latter's declarations prior to bankruptcy that claimant was the owner of certain personal property in the bankrupt's possession were admissible as primary and substantive proof against bankrupt's pecuniary and proprietary interest.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273.\*]

**5. Evidence (§ 273\*)—Declarations of Persons Since Deceased.**

Declarations of a bankrupt since deceased that claimant was the owner of certain personal property in the bankrupt's possession was admissible as against the bankrupt's trustee to establish claimant's ownership.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1108–1120; Dec. Dig. § 273.\*]

**6. Evidence (§ 313\*)—Weight and Sufficiency—Declarations Against Interest.**

Declarations against the interest of the declarant are to be given their ordinary and logical effect.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1166, 1167; Dec. Dig. § 313.\*]

In Bankruptcy. In the matter of bankruptcy proceedings of William J. Thompson, bankrupt. On petition of John J. Stoer, claimant of a certain dredge known as Dredge No. 1, to review a referee's order refusing to deliver the dredge to claimant and sustaining the title of the trustee. Reversed.

See, also, 197 Fed. 681.

George W. Harkins, Jr., of Philadelphia, Pa., for petitioner.
Bleakly & Stockwell, of Camden, N. J., for trustee.

RELLSTAB, District Judge. The creditors' petition, alleging the bankruptcy of William J. Thompson, was filed on the 22d day of April, 1911. On the 22d day of May, 1911, the bankrupt filed his schedules of assets and liabilities. On June 8, 1911, at an adjourned first meeting of the creditors, the bankrupt was examined pursuant to section 7 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]). On October 11, 1911, John J. Stoer, by his attorney in fact, W. Fred Stoer (his son), filed his petition praying for the surrender to him of dredge No. 1, which, being in the possession of the bankrupt at the time of the filing of such creditors' petition, first passed with other property into the custody of the receiver, and subsequently into that of the trustee. Between the last-mentioned date and the taking of testimony in such reclamation proceedings the bankrupt died. The present review is the second involving the title to this dredge. The first order was reversed because of the rejection of the sworn statements made by the bankrupt in his said examination before the referee, which in effect disclaimed ownership in this dredge, and declared that it was owned by the claimant. After receiving and considering such statements, the referee renewed his former finding that the title to the dredge was in the bankrupt at the time of the institution of bankruptcy proceedings.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] The evidence introduced in behalf of the claimant in the first instance supported the allegations of his petition for reclamation, and made out a prima facie case of ownership in himself and possession in the bankrupt as bailee. By this evidence his title was based on a bill of sale issued to him by the United States marshal of the Eastern District of Virginia on the 9th day of January, 1907. In response to this the trustee introduced in evidence an exemplified copy of the record, including the testimony given by such claimant, in certain proceedings instituted against him by one John L. Grim in the court of common pleas of Philadelphia, Pa., charging claimant with having purchased said dredge for the benefit of said Grim, and that the claimant had sold it without notice to him, and thereupon praying for a discovery and an accounting of the proceeds derived from such sale. This testimony, given by the claimant on the 26.h day of June, 1907, is, in substance, that within a week after purchasing such dredge at such marshal's sale he had sold·it to the bankrupt for $15,000, and that of such purchase price, represented by notes, he had been paid $10,000. As this sale was subsequent to the one evidenced by such bill of sale, claimant must fail in these proceedings unless he can show that he subsequently repossessed himself of the title. He contends that such repossession took· place, testifying, in rebuttal (not having been called in his prima facie), over the objection of the trustee, that the notes given by the bankrupt for the price of the dredge had ·not been paid; that after holding them for two or three years he gave them back to the bankrupt, and that the latter turned the dredge back to him; that he had never signed a bill of sale for the dredge, though he had been requested so to do. Being asked: "Did you enter into any agreement with him at that time (when notes were surrendered, etc.) with reference to the use of this dredge, and, if so, what?" and it appearing that no written contract .had been made between them, he, upon objection of the trustee, was prevented from answering what the agreement was.

[2] The reason assigned for refusing to permit such testimony was that, as the bankrupt was dead, claimant was prohibited from testifying to any transaction with, or statements by the deceased, as the trustee who appeared in these proceedings in a representative capacity had not testified to any such transactions or statements. No objection was made to the ruling of the referee in this behalf. Section 4 of "An act concerning evidence (Revision of 1900)"—2 Comp. St. of N. J. 1910, pp. 2217–2219—prohibits the giving of such testimony, and as such statute is made applicable to these proceedings by U. S. Rev. St. § 858, as amended by Act June 29, 1906, c. 3608, 34 Stat. 618 (U. S. Comp. St. Supp. 1911, p. 271), such ruling was correct. Murphy v. Schmidt, 80 N. J. Law, 403, 79 Atl. 293; In re Shaw (D. C.) 109 Fed. 780. The proffered testimony of the nature and terms of the oral agreement being incompetent, claimant's ownership, outside of his testimony of the surrender of the unpaid notes given in consideration of the dredge and the redelivery of the dredge to him (of doubtful competency), depends on the effect to be given to the several statements made by the bankrupt while in possession of such

dredge and afterward, as no bill of sale or other writing showing a transfer of this dredge from the bankrupt to claimant was put in evidence. The statements made by the bankrupt are as follows:

To John S. Thompson, son of the bankrupt, in May or summer of 1910, as testified by him:

"* * * That Mr. Stoer owned the dredge, and that he would lose all he put in it."

To the claimant in January of 1911, as testified by John W. Boileau, an employé of the bankrupt:

"Don't worry yourself about the dredge, because I will have that cared for during the winter. I run the boats up the creek, and your dredge will be there, it won't cost you a penny; the watchman that takes care of my boats will take care of yours."

To John Scully, in 1910, as testified by him:

"That a man by the name of Stoer owned the dredge."

And in March of 1911:

"Remember I do not own that blower, a man by the name of Stoer; I am not the owner."

To Woodman Bloxson, an employé of the bankrupt and who had charge of the dredge for several years and up to the institution of bankruptcy proceedings, in December of 1910, as testified by him:

"That owing to his ill health and the money panic of 1907, which took all of his money, and since which he had never recovered himself and that he had never paid for the dredge, and that Mr. Stoer was to take the dredge and operate it," and "that he had never paid Mr. Stoer for the dredge and what money and what repairing and what improvements he had made to the dredge in operating it would have to go with the dredge, he would have to lose that, because he didn't own the dredge."

John Harris who had represented the bankrupt for a number of years testified to two occasions when the bankrupt said that claimant owned the dredge. He said that in the early part of 1910 he was called into the bankrupt's office where he met bankrupt and claimant, and that in the course of a conversation regarding the operation of the dredge the bankrupt stated that claimant owned the dredge; that he (bankrupt) could not raise the money to pay for it and wanted to pay for it in notes; that on a later occasion, two or three months prior to the bankruptcy proceedings, the bankrupt again said that the dredge was Mr. Stoer's; that he wanted witness to prepare papers so that he could get title in his (bankrupt's) name. Harris further testified to preparing a bill of sale for the dredge; that bankrupt said he would not pay for it in cash; that he offered to pay $10,000 for it in notes, which was not accepted, and that the bill of sale was not executed.

[3] In an action of replevin to recover the possession of the dredge, or in trover for its value upon its conversion, if such had been brought against the bankrupt before the institution of the bankruptcy proceedings, such declarations would have been plenary evidence against him. They are equally so against the trustee. As to the property in the possession of the bankrupt at the time of filing the peti-

tion, the Bankruptcy Act vests in the trustee only such title as the bankrupt then had, and such as the trustee could obtain by asserting the rights and powers of a creditor holding a legal or equitable lien thereon. Section 47a2, 70a, of the Bankruptcy Act. Therefore what the bankrupt did not have or such a creditor could not obtain the trustee could not have.

[4, 5] These declarations made by the bankrupt were admissible against the trustee on two grounds: First, because made by one with whom the trustee stands in privity—i. e., privity in estate—and therefore are to be treated as if declarant were a party to these proceedings; and, second, because made by one, now deceased, while he was in possession of the dredge, the subject in controversy, and which declarations were against his pecuniary and proprietary interest. Upon the first ground they were admissible, as primary and substantive proof, even if bankrupt had not died and had been actually present before the referee; while upon the second ground their admissibility depended on the death, absence, or unavailability of the declarant. 2 Chamberlayne's Modern Evidence, § 1235; 2 Wigmore on Evidence, § 1048; 1 Greenleaf on Evidence (Lewis' Ed.) § 171; McBlain v. Edgar, 65 N. J. Law, 634, 48 Atl. 600; State v. Pulley, 82 N. J. Law, 579, 82 Atl. 857. The admissibility of such evidence, however, is not disputed by the trustee, nor was it doubted by the referee. It being substantive evidence, the remaining question is, what is its probative value? The referee, in dealing with the efficiency of such declarations, said:

"In the light of the Philadelphia testimony (given in the Grim case), the only construction that I can place upon evidence of this character by these and other witnesses is that Thompson was speaking from the layman's standpoint that he had purchased the dredge from Stoer, as testified to in the Grim case, had given notes for the payment of the purchase price, had met some of those notes, and because he would be unable to raise the balance, expected to lose the dredge to Stoer or on his suit."

These statements were made at various times during a period of several years, during all of which time the bankrupt was in possession of the dredge, and during almost all of which he was operating it, and they were made to different persons, two of whom were his regular employés, another his own son, and still another an agent who transacted some of his real estate business and assisted him in preparing the schedules which the bankrupt executed and filed in these proceedings. All these statements were antagonistic to the bankrupt's pecuniary and proprietary interest. All, either expressly or by exclusive implication, disclaimed ownership in the dredge, and put the ownership in the present claimant. Some of them were coupled with statements showing that the bankrupt recognized that in asserting ownership in another he was doing so at considerable pecuniary loss to himself; and those made to the real estate agent, or to the claimant in such agent's presence, were accompanied by a deliberate purpose on the bankrupt's part to secure title to the dredge. The character of these declarations, the time when made, the conditions confronting the declarant, and the situation in which he found himself, all evince in the clearest possible manner that they were not haphazard expres-

sions, and were not dropped unwarily by him, but were uttered with a full consciousness of their meaning, and that the failure to secure the ownership of such dredge entailed a loss of all the money expended by him thereon while in the use thereof, and that as to some of them he was impelled by a sense of justice to make it known that the claimant, and not he, was the owner of that particular dredge.

[6] Utterances thus couched and made are of great probative value, and are to be given their ordinary and logical effect. Human experience justifies the reliance upon declarations made against self-interest. Some judges have considered self-interest as the equivalent of the sanction of an oath, others even a stronger sanction. Wigmore, supra, §§ 1048, 1457; Gibblehouse v. Stong, 3 Rawle (Pa.) 437; Addams v. Seitzinger, 1 Watts & S. (Pa.) 244.

The probative value of these declarations made before the bankruptcy act was invoked is enhanced, if that be possible, by judicial statements made by the bankrupt, when interrogated at the instance of the trustee, at such first meeting of the creditors. This testimony is as follows:

"Q. Did ·you have a contract in writing with J. J. Stoer providing terms under which you were to operate that dredge? A. No.

"Q. It was an oral understanding between the two of you? A. Yes."

"Q. Was it an agreement between you and Stoer that you should operate the dredge and pay the expenses of operation? A. Yes.

"Q. There are three or four libels filed against the dredge for wages of various items, from captain down to cook, I think. A. Yes.

"Q. Who incurred those bills? A. I was to pay all the expenses.

"Q. You incurred those bills, did you? A. Yes.

"Q. Was Stoer to get any profit out of the operation of the dredge? A. The only profit he was to get out of it was that the dredge was to be fixed up and ·given a lot of rehabilitation, and they were to have the dredge at any time.

"Q. And you were to put it in repair? ·A. Yes. Q. And keep it in repair? A. Yes.

"Q. And you had 'to pay the expense of operation? A. That's right."

Such testimony was given after he had filed his schedules in which there is no mention of the dredge in question, though other dredges are named therein, and in the following question, asked by counsel for the trustee: "Did you have a contract in writing with J. J. Stoer, providing terms under which you were to operate that dredge?" the word "that" undoubtedly was used to direct the bankrupt's attention to the dredge in controversy which, with others in the possession of the bankrupt, had been taken over by the receiver, and was then in his custody as trustee. These statements made before and after the institution of bankruptcy proceedings, the latter being judicial in their nature, and all being against the pecuniary and proprietary interests of the bankrupt, cannot, in the light of the circumstances surrounding them, be disposed of as the utterances of one not understanding either their import or his legal and proprietary rights in the premises. The bankrupt was a man of considerable business experience, accustomed to handling large enterprises, and presumably possessed of a native desire to retain all that belonged to him. The time of making the earlier disclaimers of ownership negatives the idea that he was hope-

205 F.—36

less of carrying his enterprises to a successful conclusion; and there is nothing in the record that suggests that before the filing of the petition in bankruptcy against him, he was planning to give to claimant a dredge that really belonged to his own estate. Had he so designed, an open notorious change of possession, or the execution of some documentary evidence of ownership, would seemingly have occurred to him. Nor is there anything to suggest that he, while under oath, would deliberately utter an untruth to favor claimant and against himself. While the change of base of claimant's title pending the taking of testimony suggests bad faith and demands a rigid scrutiny, yet such conduct is not a sufficient reason for denying his right to recovery in the presence of the bankrupt's cited declarations. The failure of counsel to call claimant to testify on his prima facie case, when the trustee offered to waive the question of his competency as a witness, tends to a conviction that claimant sought to avoid a disclosure of the whole transaction between him and the bankrupt. This was a mistake and in some circumstances would be disastrous. This effect, however, is overcome by claimant's subsequently taking the stand and attempting to testify as to such transaction, but which he was prevented from doing on objection of the trustee.

If complainant's right to the dredge depended upon what he might say in explanation of his course in attempting to use a spent bill of sale, or of what actually took place between him and the bankrupt, such conduct might justify a finding against him, but, as shown, such right of recovery is not thus based, but rests solely on what the bankrupt has said both in and out of court. While public policy denies claimant the right to testify to statements made by the deceased and to transactions had with him, it does not close the lips of the other witnesses from whom we have the cited declarations which are affirmative proof of title in the claimant. Such declarations are utterly at variance with the idea that the bankrupt had title in the dredge; they consistently and effectively prove that the ownership of such dredge is in the claimant, and are in legal effect the equivalent of documentary evidence of title in the claimant against which the mere possession of the dredge by the bankrupt, at the time the bankruptcy proceedings were instituted against him, cannot prevail.

The order under review is reversed, and the cause remanded, with direction that an order be made in accordance with this opinion.