**RANKIN v. COX et al.**

No. 9873.

Circuit Court of Appeals, Eighth Circuit.

April 17, 1934.

Glen H. Foe and Harold J. Requartte, both of Lincoln, Neb. (Maxwell V. Beghtol and Thomas S. Allen, both of Lincoln, Neb., on the brief), for appellant.

C. C. Fraizer, of Aurora, Neb. (Craft, Edgerton & Fraizer, of Aurora, Neb., on the brief), for appellees.

Before STONE and WOODROUGH, Circuit Judges, and OTIS, District Judge.

WOODROUGH, Circuit Judge.

Suits in equity (consolidated for trial) were brought by the trustee of Joshua Cox, bankrupt, to set aside two $20,000 real estate mortgages given by the bankrupt more than four months prior to bankruptcy, but recorded within the four-month period. It is clear that the mortgages were given for full present consideration passing to the bankrupt at the time and were not preferences voidable under section 60a and section 60b of the Bankruptcy Act, as amended, 11 US CA § 96 (a, b). But the claim pressed upon the special master and the trial court and now insisted upon rests on the allegations of the trustee's petitions that the mortgages were given "with the collusive agreement or understanding" that they "would be withheld from record * * *; that the specific purpose of withholding them from record was to prevent the impairment of the credit of said Joshua Cox and to enable him to borrow money upon the apparent ownership of said lands free of encumbrance * * *; that said mortgages were given to hinder, delay or defraud the creditors of said Joshua Cox and had that effect and result.

* * * *" That the mortgages "constituted a secret lien upon the real estate for the purpose of preserving the credit of said Joshua Cox by concealing the fact that said Joshua Cox was in straitened financial condition and in fact insolvent." That "by reason of the fact that the mortgages did not appear of record but were, pursuant to said scheme and agreement, withheld from record * * * many creditors whose claims have been duly filed and allowed in the bankruptcy proceeding, relied upon the records * * * and being misled by the fact that the said mortgages were not recorded, extended credit to the said bankrupt between the respective dates of the delivery of said mortgages and the date of the filing thereof in the belief that he was the owner of the real estate * * * free and clear of encumbrance by" the mortgages. "That the mortgages constitute fraudulent transfers," voidable at the suit of the trustee.

The master in chancery reported in favor of sustaining the mortgage liens and the District Court affirmed, dismissing the suit. The trustee in bankruptcy appeals.

Under the Bankruptcy Act the trustee had the right to avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided (section 70e of the Act, 11 USCA § 110 (e), including the right accorded creditors under the state law to avoid transfers made to hinder, delay, or defraud them. Section 36-401, Comp. St. Neb. 1929,[1] Shreck v. Hanlon, 66 Neb. 451, 92 N. W. 625, and Id., 74 Neb. 264, 104 N. W. 193; Sheldon v. Parker, 66 Neb. 610 and 634, 92 N. W. 923, 95 N. W. 1015. It was conceded in the trial court that under the Nebraska statute, as construed by the Supreme Court, real estate mortgages are not required to be recorded except as against subsequent purchasers and incumbrancers.[2]

---

[1] Section 36-401, Comp. St. of Nebraska, 1929:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay or defraud creditors or persons, of their lawful rights, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, or decree or judgment suffered, with the like intent as against the persons so hindered, delayed or defrauded shall be void."

[2] Section 76-218 Compiled Statutes of Nebraska, 1929:

"All deeds, mortgages and other instruments of writing which are required to be recorded shall take effect and be in force from and after the time of delivering the same to the register of deeds for record, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice whose deeds, mortgages or other instruments shall be first recorded: Provided, such deeds, mortgages and instruments shall be valid between the parties."

Stocker v. Church, 113 Neb. 639, 204 N. W. 398; Carey v. Donohue, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295; Blair State Bank v. Stewart, 57 Neb. 58, 77 N. W. 370. And none of the bankrupt's creditors represented by the trustee was a subsequent purchaser or incumbrancer.

Of the two mortgages attacked in these suits, one was given to the bankrupt's nephew, Ralph E. Cox, and the other to the bankrupt's brother James.

We consider first the mortgage to the nephew. The bankrupt testified that there was an express oral agreement that the mortgage should not be recorded. The nephew testified to the contrary that there was no such agreement or understanding. The nephew was to some extent corroborated by the witness Mr. Charles F. Stroman, who was present at conferences where the loan was discussed and stated that there was nothing said in his presence about an agreement to refrain from recording or withholding the mortgage from record that he could recall. He thought there was nothing said about withholding from record. The import of the findings of the special master who saw and heard the witnesses is that the alleged agreement was not proven; and the trial court thought the evidence clearly preponderated against the trustee on the question of fraudulent agreement to withhold the recording of this mortgage. But the trustee insists that the proven circumstances under which this mortgage was given and withheld from record compel the conclusion that the lien was fraudulent and voidable at his instance, notwithstanding the conflict as to what was said at the time of the negotiation for and execution of the mortgage. We have, accordingly, examined the testimony and find as the facts which appear to us controlling:

That the bankrupt, Joshua Cox, was the owner of considerable real estate and engaged in farming on shares with his tenants on farm land and in feeding live stock. He was the president and active in the management of the American State Bank of York, Neb., for fifteen years before its failure in November, 1929, owning a majority of the stock and transacting all of his business through the bank. He also owned stock in the American State Bank Building Association and the American Trust Company, institutions closely affiliated with the bank of which he was president. His two nephews were associated with him in the American State Bank of York; Ralph E. Cox as cashier and a member of the board of directors

and Frank H. Cox as assistant. His brother James, father of Ralph E. and Frank H. Cox, was a stockholder in the bank, but not otherwise associated or interested in the bankrupt's enterprises. The bankrupt was also the president of and in control of a bank at Polk, Neb., in the adjoining county, in which neither his brother nor his nephews' had any direct interest. Although the bankrupt was at all times largely indebted to both secured and unsecured creditors, we adopt the finding of the trial court upon the conflicting testimony that the bankrupt was not insolvent at the time of the transactions involved. It appears that in May, 1929, the bankrupt requested his nephews to loan him $20,000 to enable him to fix up the reserve of his bank at Polk, the bank examiners having reported $38,000 of the paper of that bank to be bad or doubtful. There had been friction between the bankrupt and his nephews because of the bankrupt's insistence upon putting paper from the Polk bank into the American State Bank of York, and the relations between the kinsmen were strained. The bankrupt disclosed the necessity he was under to put money into his Polk bank to prevent its failing and also represented that the failure of the Polk bank would bring a run on the American State Bank, in which the bankrupt, his brother, and his two nephews had a common interest. The nephews had no ready money to loan but raised the $20,000 on Frank's personal credit and resources and loaned the money to the bankrupt for the term of one year at 7 per cent., taking the mortgage in controversy as security. The understanding was that the bankrupt would shortly be able to and would sell some of his lands and repay the loan. Frank H. Cox testified that he had handled mortgages for the American State Bank for three or four years and that the bank had always filed them of record. He did not file this mortgage for more than four months after it was given, and his only explanation was "that it was just negligence." The explanation was disingenuous. The transaction was of great importance to the nephews and the major incidents of it were forced sharply upon their consideration.

But it does not necessarily follow that the trial court was wrong in concluding that there was no understanding or agreement to withhold the mortgage from record. Although the bankrupt expected that it would not be recorded as appears from the fact that he made property statements for credit declaring that there were no recorded mortgages against the lands, and did so deliberate-

ly, in the confidence that the nephews would not record it, the evidence shows that the real reason why they did not record the mortgage was because, as experienced bankers, they feared that such recording would injure the American State Bank in which all of the parties to the transaction had a vitally important interest. The bankrupt, as president of the bank and an active business man, was prominent in the community and the recording of a $20,000 mortgage on his land would inevitably stir up unfavorable discussion of the bank and its affairs. The evidence refutes any possible inference that the loan was made by the nephews out of personal consideration for the uncle. They made it solely to enable him to save his Polk bank and thereby relieve and safeguard the American State Bank. We find no testimony in the record that brings home to the nephews any intent on their part to bolster up their uncle's credit for his personal advantage. Although it is proven that they had access to and inspected the uncle's bank account at the American State Bank where he transacted his business, it is not shown that they knew of any transactions contemplated by their uncle in which he would require or use the appearance of credit afforded him by his record ownership of the lands mortgaged to them.

 It is true, he did misuse the appearance of land ownership in himself and incurred obligations by making certain of the creditors believe that he owned the lands clear, but we are not persuaded that such creditors or the bankruptcy trustee for them are entitled, under Nebraska law, to have the mortgages avoided.

It results in every case where a mortgage is given by the record owner of land and withheld from record that the debtor's real condition is not what it seems to be on the records. Where he stays in possession, those who extend him credit in reliance on the appearance and on the record may lose, but the Nebraska recording laws do not purport to guarantee against all such loss. The laws do protect subsequent innocent purchasers or incumbrancers of the same lands, and regardless of the equities, accord to those who first file their instruments priority over late comers. So far as the letter of the statute is concerned, there is no other safeguard against frauds provided. Relief against abuse of the recording laws is entirely a creature of equity and equity assumes to relieve only against such abuses as amount to a fraud upon those in whose behalf it is asserted.

Where it can be shown that a mortgagee has withheld his mortgage from record under an agreement so to do and with the intent to enable the mortgagor to contract obligations on the faith of his seemingly clear ownership and so work a fraud upon creditors, there is a fraud to which the mortgagor and mortgagee are alike parties. There is a remedy in equity for the fraud to be accorded by avoiding the lien of the mortgage at the instance of any creditor so defrauded. We think the true rule is as stated by Judge Lurton in Rogers v. Page (C. C. A.) 140 F. 596, page 606:

" * * * The mere fact of an agreement to withhold (a real estate mortgage) from record is not of itself such evidence of a fraudulent purpose as to constitute fraud in law. It is, however, a circumstance constituting more or less cogent evidence of a want of good faith, according to the particular situation of the parties and the intent as indicated by all of the facts and circumstances of the particular case. 14 A. & Eng. Enc. Law, p. 526; Story, Eq. § 363; Bigelow on Fraud, p. 88 et seq.; Brown v. Easton (C. C.) 112 F. 592; Corwine v. Thompson N. Bank, 105 F. 196, 44 C. C. A. 442; Cadogan v. Kennett, 2 Cowp. 432; Davis v. Schwartz, 155 U. S. 631, 639, 15 S. Ct. 237, 39 L. Ed. 289; Blennerhassett v. Sherman, 105 U. S. 100, 117, 26 L. Ed. 1080; Hafner v. Irwin, 23 N. C. 490; Hilliard v. Cagle et al., 46 Miss. 309."

Tested by this rule, an understanding between the parties in this case that the mortgage would not be recorded would undoubtedly have been an important circumstance for consideration, but not determinative that the conduct of the nephews of the bankrupt was in fraud of the creditors represented by the trustee. As it does not appear that the nephews considered their uncle to be insolvent or that they had any reason to believe that he would engage in any transactions upon false pretenses as to his means, or that he would incur any obligations beyond his ability to fulfill; and as it is shown that the nephews loaned him their money in good faith upon the expectation that he would put his bank in Polk in a solid and solvent condition and that he would shortly sell some land and pay them back, with reason to expect benefit to their own bank and harm to no one, we are not persuaded that there was fraudulent withholding from record upon agreement in bad faith towards any of the creditors represented by the trustee in bankruptcy.

It is contended for the trustee that a withholding of the mortgage from record pursuant to understanding between the parties should be deemed conclusive evidence of fraud upon the bankrupt's subsequent creditors, and the following cases are cited: Hodiamont Bank v. Livingstone (C. C. A.) 35 F. (2d) 18; McAtee v. Shade (C. C. A.) 185 F. 442; Dobson v. Snider (C. C.) 70 F. 10; National Bank of Athens v. Shackelford (C. C. A.) 208 F. 677; Id., 239 U. S. 81, 36 S. Ct. 17, 60 L. Ed. 158; In re Duggan (D. C.) 182 F. 252; In re Duggan (C. C. A.) 183 F. 405; Clayton v. Exchange Bank of Macon (C. C. A.) 121 F. 630; Mitchell v. Mitchell (D. C.) 147 F. 280; Fourth National Bank of Macon v. Willingham (C. C. A.) 213 F. 219; Crothers v. Soper et al. (C. C. A.) 10 F.(2d) 793; Davis v. Cassels (D. C.) 220 F. 958; Manders v. Wilson (C. C. A.) 235 F. 878; Jeggle v. Mansur (C. C. A.) 17 F.(2d) 729; Rogers v. Page (C. C. A.) 140 F. 596; In re National Boat & Engine Co. (D. C.) 216 F. 208, 209; In re Lamie Chemical Co. (C. C. A.) 296 F. 24; Peterson v. Mettler (D. C.) 198 F. 938; Ash v. Honig (C. C. A.) 62 F.(2d) 793. We find that none of the cited Nebraska cases sustains the doctrine. Careful consideration of each of the other cases convinces that each turned upon the particular facts presented in the case, and that none is in conflict with the rule as we have quoted it from the statement by Judge Lurton in Rogers v. Page, supra, except that National Bank v. Shackelford; Clayton v. Exchange Bank and In re Duggan, supra, were decided upon a statute of Georgia sufficiently different from the Nebraska statute to distinguish the cases. The other cases in which the mortgages were given without consideration or without present consideration, or where there were acts amounting to estoppel by the mortgagee, are not controlling here.

The decree sustaining the lien of the mortgage given by the bankrupt to his nephew was, therefore, not erroneous.

■ As to the other $20,000 mortgage in controversy, it appears that the brother of the bankrupt to whom it was given died before the trial and the question is first presented whether the bankrupt was competent to testify to the relevant conversations and transactions between them under the Nebraska statute. The statute provides:

Section 20-1202, Compiled Statutes of Nebraska, 1929:

"No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless the evidence of the deceased person shall have been taken and read in evidence by the adverse party in regard to such transaction or conversation or unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation, in which case the person having such direct legal interest may be examined in regard to the facts testified to by such deceased person or such witness, but shall not be permitted to further testify in regard to such transaction or conversation. (Code § 329, R. S. p. 449; 1883, p. 328; Ann. 1314; Comp. 6882; R. S. 1913, 7894; C. S. 1922, 8836.)"

The bankrupt's testimony was taken by the special master over objection to the competency of the witness under the statute, but the trial court excluded the testimony from consideration. Exceptions were saved and the question is presented by appropriate assignment.

We think the ruling of the trial court was in accordance with the principle of the Nebraska interpretation of the statute. Sorensen v. Sorensen, 56 Neb. 735, 77 N. W. 68; Tecumseh Nat. Bank v. McGee, 61 Neb. 709, 85 N. W. 949; which interpretation is controlling, USCA, title 28, § 631; In re Thompson (D. C.) 205 F. 556; Remington on Bankruptcy, vol. 2, §§ 660 and 2225. No case is cited to us from Nebraska deciding the exact question whether a bankrupt is competent to testify in a suit by his trustee against the representative of a deceased person concerning relevant transactions and conversations between the bankrupt and the deceased. But in the case of Housel v. Cremer, 13 Neb. 298, 14 N. W. 398, 399, the Supreme Court of Nebraska had for consideration an action in replevin brought against an assignee for the benefit of creditors. The lady who had made the assignment of her property for the benefit of her creditors had died and the plaintiff in the replevin suit undertook to testify to conversations and transactions had with her in her lifetime. The Supreme Court held he was incompetent to testify under the statute, saying:

"The first of these (assignments of error) is that Housel, who offered himself as a witness in his own behalf, was not permitted to testify, the court holding him to be disqualified by section 329 of the Code of Civil Procedure, which provides that 'No person

having a direct legal interest in the result of any civil cause or proceeding, shall be a competent witness therein when the adverse party is an executor, administrator, or legal representative of a deceased person,' etc. This ruling was correct. It is true that Cremer was neither an executor nor administrator, but he was the assignee of Agnes M. McKelligon, and, within the contemplation of the statute, her 'legal representative.' He had, by the deed of assignment, been intrusted with the property in controversy for the purpose of selling it and paying off her debts. This done, if there should happen to be a surplus it would belong to her estate. * * * "

Although the facts are not completely analogous, we think the principle announced is controlling upon us here. As declared by this court in Burton Coal Co. v. Franklin Coal Co., 67 F.(2d) 796, 801, "in the normal administration of a bankrupt estate, any surplus remaining in the custody of the trustee should go to the bankrupt." We see no reason to doubt that the right of the bankrupt to all of his estate that may remain after bankruptcy administration is a right of a legal nature, and necessarily results in his having a direct legal interest in the bankrupt estate within the language of the Nebraska statute. Wheeling Structural Steel Co. v. Moss (C. C. A.) 62 F.(2d) 37; In re Silk (C. C. A.) 55 F.(2d) 917; Berl v. Crutcher (C. C. A.) 60 F.(2d) 440, 441; Johnson v. Norris (C. C. A.) 190 F. 459, L. R. A. 1915B, 884. The bankrupt has also the right to make composition with his creditors (section 12 Bankruptcy Act, USCA, title 11, § 30) and upon confirmation of the composition, the bankruptcy proceeding must be dismissed (section 12e of the Act (11 USCA § 30(e), leaving the bankrupt's title to his estate unimpaired by the bankruptcy proceeding. This right also is in the nature of a legal interest in the estate.

The trial court cited in support of its conclusion cases in Nebraska holding that parties who are disqualified from testifying because of interest, cannot render themselves competent by transferring such interest after the death of the other party. Magemau & Company v. Bell, 13 Neb. 247, 13 N. W. 277; Riddell v. Riddell, 70 Neb. 472, 97 N. W. 609. Bankruptcy does operate to transfer the title and rights of the bankrupt to his trustee for the purposes of administration and these decisions lend support even though, as in this case, the bankruptcy was involuntary.

The trial court also called attention to the fact that in this case the wife and daughters of the bankrupt had claims duly allowed aggregating a large percentage of all the allowed claims against the estate. It is held in Nebraska that the interest which a husband has in a cause of action belonging to the wife to recover real estate is a "direct legal interest" within the meaning of the statute, Holladay v. Rich, 93 Neb. 491, 140 N. W. 794; McEntarffer v. Payne, 107 Neb. 169, 185 N. W. 329; Brocker v. Day, 124 Neb. 316, 246 N. W. 490, and the existence of the claims of the wife and daughters illustrates the propriety of excluding the bankrupt's testimony to accord with the spirit of the Nebraska statute.

The record indicates that the transaction in which James Cox loaned the bankrupt $20,000 and the bankrupt gave his brother the mortgage in controversy as security, was entirely between the two brothers, with apparently no witnesses. The mortgage was withheld from record until after the death of James Cox and until occurrences developed strong likelihood that the Polk bank would fail. But we find in the record no circumstances indicative of fraudulent conduct or intent on the part of James Cox or his administrator towards the creditors represented by the trustee sufficient to require reversal of the decree of the trial court adjudging this mortgage valid as to the trustee in bankruptcy of Joshua Cox.

The decrees in both cases are, therefore, affirmed.